EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Adria Maldonado Rivera Recurrida<br><br>v.<br><br>Carlos Suárez y otros Recurrido<br><br>Estado Libre Asociado de Puerto Rico<br><br>Peticionario | Certiorari<br><br>2016 TSPR 57<br><br>195 DPR ____ |

Número del Caso: CC-2014-723

Fecha: 28 de marzo de 2016

Tribunal de Apelaciones:

      Región Judicial de Mayagüez

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

      Lcda. Tanaira Padilla Rodríguez
      Subprocuradora General

      Lcda. Marangelí Colón Requejo
      Procuradora General Auxiliar

      Lcda. Amir Cristina Nieves Villegas
      Procuradora General Auxiliar

Abogados de la parte Recurrida:

      Lcdo. Domingo Emanuelli Hernández
      Lcdo. Gabriel J. Emanuelli Anzalota

Materia: Daños y Perjuicios. Art. 1802 del Código Civil. Doctrina de la solidaridad impropia. Cocausante demandado no puede traer al pleito mediante demanda contra tercero a un presunto cocausante con respecto a quien la acción del perjudicado prescribió. Tampoco procede en esas circunstancias una acción de nivelación contra el alegado cocausante que no fue demandado a tiempo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Adria Maldonado Rivera

  Recurrida

        v.

Carlos Suárez y otros

  Recurrido                CC-2014-723

Estado Libre Asociado de Puerto Rico

  Peticionario

Opinión del Tribunal emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 28 de marzo de 2016.

En _Fraguada v. Hosp. Aux. Mutuo_, 186 D.P.R. 365 (2012), acogimos la doctrina de la solidaridad impropia u obligación _in solidum_ en lo referente a la interrupción de la prescripción en acciones sobre daños y perjuicios cuando concurren una pluralidad de causantes. Así, concluimos que en esta clase de acciones no aplica el Art. 1874 del Código Civil, 31 L.P.R.A. sec. 5304, por lo que el perjudicado debe interrumpir el término prescriptivo con respecto a cada cocausante individualmente si desea conservar su causa de acción contra cada uno.

Hoy nos toca examinar una controversia que no está resuelta. ¿Pueden unos presuntos cocausantes solidarios de un daño, quienes fueron demandados oportunamente, instar una demanda contra tercero para incluir en el pleito a otro presunto cocausante a favor de quien la causa de acción sobre daños y perjuicios prescribió? ¿Procede en estas circunstancias una acción de nivelación contra el alegado cocausante que no fue demandado a tiempo? En atención a los efectos de la prescripción, resolvemos que ese alegado cocausante no le responde al perjudicado ni tampoco, a través de una acción de nivelación contingente, a los presuntos cocausantes demandados. Por lo tanto, en una situación como ésta no procede la demanda contra tercero. Veamos.

I

El 24 de junio de 2013, la joven Adria Maldonado Rivera ("demandante") instó una demanda sobre daños y perjuicios en contra del Sr. Carlos Suárez Miranda, su hijo Carlos Juan Suárez González (en conjunto, "los recurridos") y el Sr. Ricardo Ramos Inchautegui.[1] La demandante expuso que el 24 de julio de 2011, alrededor de las 11:30 p.m., se encontraba como pasajera junto a otras personas en una lancha -propiedad del señor Suárez Miranda- de paseo por la Bahía de Boquerón. Alegó que la lancha era conducida por Carlos Juan Suárez González a

---

[1] También se incluyó como codemandada a la sociedad legal de bienes gananciales de la que puedan ser parte, respectivamente, los señores Suárez Miranda y Ramos Inchautegui.

alta velocidad y sin tomar las debidas precauciones, por lo que impactaron el velero del señor Ramos Inchautegui que se encontraba anclado con las luces apagadas, sin permiso ni marbete. Como consecuencia del choque, la demandante sostuvo que sufrió daños físicos y emocionales cuya indemnización le reclamó a los recurridos y al señor Ramos Inchautegui como cocausantes solidarios.

Los recurridos contestaron la demanda y negaron responsabilidad.[2] Posteriormente, presentaron una demanda contra tercero en contra de la Policía de Puerto Rico, el Departamento de Recursos Naturales y Ambientales y el Estado Libre Asociado de Puerto Rico (en conjunto, "E.L.A."), en la cual le imputaron negligencia por presuntamente no vigilar el área de la Bahía de Boquerón donde ocurrió el accidente, lo que permitió que el velero del señor Ramos Inchautegui permaneciera anclado de manera peligrosa. Así, mediante la demanda contra tercero los recurridos sostuvieron que el E.L.A. le respondía directamente a la demandante por sus daños o, en la alternativa, le debía responder a ellos en nivelación por la cantidad que tuvieran que indemnizar a la demandante.

---

[2] Entre sus defensas afirmativas, los recurridos expresaron que la demanda en su contra estaba prescrita, pues la demandante no interrumpió el término prescriptivo. Esta contención aún no ha sido objeto de consideración ante el Tribunal de Primera Instancia ni se ha pasado prueba al respecto. Así lo reconocen los propios recurridos al declarar que "dicha defensa afirmativa tendrá que ventilarse en su día para que sea el Tribunal, mediante la moción correspondiente y/o en juicio plenario, [quien] resuelva la misma". *Alegato de la parte demandada-demandante contra tercero*, pág. 6.

El E.L.A. contestó y solicitó la desestimación de la demanda contra tercero. Adujo que la reclamación de la demandante había prescrito a su favor ya que no la incluyó como codemandada ni interrumpió la prescripción extrajudicialmente dentro del año desde la fecha en que ocurrió el accidente. Es decir, que desde entonces comenzó a transcurrir el término prescriptivo. Por su parte, los recurridos se opusieron y sostuvieron que: "[e]l hecho de que la parte demandante original no haya hecho reclamación alguna contra la parte tercera demandada... no es óbice para que los terceros demandantes, puedan presentar esta acción de nivelación dentro de este mismo pleito en virtud de una demanda contra tercero". *Moción en oposición a desestimación*, Apéndice, pág. 123.

Al resolver, el Tribunal de Primera Instancia razonó que la demandante pudo haber ejercido su causa de acción contra el E.L.A. desde la fecha del accidente,[3] por lo que, al estar prescrita contra ésta, dictó una sentencia parcial en la cual desestimó la demanda contra tercero.[4] Concluyó que en Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, este Tribunal dictaminó que en acciones por

---

[3] Este hecho no está en controversia.
[4] Resolvió que:
>     En el presente caso no hay duda que la demanda contra tercero contra uno de los alegados cocausantes fue presentada 2 años después de ocurridos los alegados hechos. Además alegaron que contra ello[s] no fue interrumpido el término prescriptivo conforme dispone nuestro ordenamiento. Dicha alegación no fue rebatida por el tercero demandante ni por el demandante original, el cual no cumplió con la Regla 8.4 de Procedimiento Civil. En consecuencia, conforme a lo antes expuesto resolvemos que la demanda contra tercero está prescrita. *Sentencia parcial*, Apéndice, pág. 73.

responsabilidad civil extracontractual cuando varios causantes concurren en el daño, el término prescriptivo debe interrumpirse individualmente respecto a cada uno. Por lo tanto, estando prescrita la causa de acción de la demandante contra el E.L.A., los recurridos no podían reclamarle responsabilidad indirectamente por vía de una demanda contra tercero.[5]

Oportunamente, los recurridos acudieron al Tribunal de Apelaciones y le imputaron error al Tribunal de Primera Instancia por concluir que su acción de nivelación estaba prescrita "por el hecho de que la demandante no incluyera al Estado Libre Asociado, a la Policía de Puerto Rico y al Departamento de Recursos Naturales y Ambientales como partes demandadas en su demanda".[6]

El Tribunal de Apelaciones dictó una sentencia mediante la cual modificó la determinación apelada. Concluyó que el precedente de Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, no tiene el efecto de impedir una acción de nivelación contra el E.L.A. Así, estimó que la demanda contra tercero para que el E.L.A. le respondiera directamente a la demandante estaba prescrita. Sin embargo, no estaba prescrita aquella parte de la demanda contra tercero en la que se incluyó la reclamación contingente de nivelación para que el E.L.A. le responda a los recurridos por cualquier cantidad que éstos finalmente

---

[5] Id.
[6] Escrito de apelación, Apéndice, pág. 64.

tuvieran que pagar. Ello, pues los recurridos, de ser declarados cocausantes, estarían obligados a reparar todo el daño, incluyendo aquella parte -si alguna- a la cual hubiera contribuido el E.L.A.[7]

Luego de solicitar sin éxito la reconsideración, el E.L.A. recurrió ante este Tribunal y adujo como único señalamiento de error que "[e]rró el Honorable Tribunal de Apelaciones al concluir que la causa de acción de nivelación contra el ELA no se encuentra prescrita, a pesar de que la causa de acción original de la demandante en contra del Estado sí lo está".[8]

Los recurridos se opusieron a la expedición del recurso de *certiorari* y sostuvieron que procedía su acción de nivelación contingente pues estaban sujetos a responder por todo el daño, incluyendo aquella parte correspondiente a la alegada responsabilidad del E.L.A. Examinados los escritos, expedimos el recurso y le concedimos a las partes un término para someter sus alegatos. Habiéndose cumplido lo anterior, estamos en posición de resolver la controversia.

II

A. La demanda contra tercero

La Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 12.1, reglamenta el mecanismo procesal de la demanda contra tercero. Según esta Regla:

---

[7] Sentencia del Tribunal de Apelaciones, Apéndice, pág. 24.
[8] *Petición de certiorari*, pág. 7.

> [l]a parte demandada podrá notificar, como demandante contra tercero, un emplazamiento y demanda a una persona que no sea parte en el pleito y que sea o pueda ser responsable a la parte demandada por la totalidad o parte de la reclamación de la parte demandante, o que sea o pueda ser responsable a cualquier parte en el pleito. Regla 12.1 de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 12.1.

Por medio de la demanda contra tercero se permite que controversias surgidas de unos mismos hechos y relacionadas entre sí se diluciden dentro del mismo pleito. El propósito es promover la economía procesal y facilitar la pronta, pero eficaz, resolución de las controversias. Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20, 28 (1986); J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Pubs. JTS, 2011, pág. 580. Por ello hemos dicho que este mecanismo no crea, extiende o limita derechos sustantivos, sino que acelera su dilucidación. Gen. Accid. Ins. Co. P.R. v. Ramos, 148 D.P.R. 523, 534 (1999); Colón v. Coop. de Seguros Múltiples de P.R., 111 D.P.R. 568, 571 (1981).

También hemos aclarado que el solo hecho de tener en común un mismo supuesto fáctico no es suficiente para añadir a un pleito nuevas controversias mediante la demanda contra tercero. Colón Negrón v. Mun. Bayamón y otros, 192 D.P.R. ___, 2015 T.S.P.R. 23, pág. 22; Gen. Accid. Ins. Co. P.R. v. Ramos, supra, pág. 534. Reiteradamente hemos requerido que se satisfagan dos condiciones ulteriores: que la reclamación contra el

tercero sea contingente al resultado de la demanda original, y que exista una relación suficientemente estrecha entre la demanda original y la demanda contra tercero, requisito al que nos hemos referido como "entronque común" y que debe ser evaluado según las circunstancias particulares de cada caso. Colón Negrón v. Mun. Bayamón y otros, supra, págs. 26-27.

B. La prescripción

La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción. Se trata de "un modo de extinción de los derechos, resultante de la no concurrencia de ningún acto interruptivo, durante el plazo marcado por la Ley". J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Ed. Bosch, Barcelona, 1996, pág. 32, citando a Alas, De Buen & Ramos, De la prescripción extintiva, Madrid, 1918, pág. 57.[9] A través de la prescripción nuestro ordenamiento promueve que las reclamaciones se insten de manera oportuna y que las personas ejerciten sus causas de acción diligentemente. La prescripción extintiva se fundamenta en la necesidad de que haya estabilidad en las relaciones y seguridad en el tráfico jurídico.[10] S.L.G. García-Villega

---

[9] "Las acciones prescriben por el mero lapso del tiempo fijado por la ley". Art. 1861 del Código Civil, 31 L.P.R.A. sec. 5291.
[10] Nos dice Puig Brutau, op. cit., en la pág. 32:
> La prescripción extintiva tiene su fundamento en la necesidad de poner término a las situaciones de incertidumbre en el ejercicio de los derechos y en la presunción de abandono por parte de su titular. La

v. E.L.A. et al., 190 D.P.R. 799, 813 (2014); S.L.G. Serrano-Báez v. Foot Locker, 182 D.P.R. 824, 831 (2011). Se parte del supuesto de que las reclamaciones válidas se ejercitan oportunamente y de que una persona no debe estar sujeta de forma indefinida a la contingencia de una reclamación. Ello, entre otras razones, por la situación de indefensión en que pudiera quedar como consecuencia del paso del tiempo y la desaparición de la prueba. Campos v. Cía. Fom. Ind., 153 D.P.R. 137, 143 (2001); Culebra Enterprise Corp. v. E.L.A., 127 D.P.R. 943, 950 (1991).[11]

Así, una vez se agota un término prescriptivo se extingue el derecho a ejercer la causa de acción, con la correspondiente exoneración para la persona que hasta entonces se encontraba sujeta a responder.[12] Santiago v. Ríos Alonso, 156 D.P.R. 181, 188 (2002); Galib Frangie v. El Vocero de P.R., 138 D.P.R. 560, 566 (1995). Por otra parte, la prescripción es una defensa afirmativa que debe plantearse expresa y oportunamente ya que, de lo contrario, se entiende renunciada. Meléndez Guzmán v. Berríos López, supra, pág. 1017; Álamo v. Supermercado Grande, Inc., 158 D.P.R. 93 (2002).

---

inactividad, silencio o falta de ejercicio del derecho constituye el fundamento de la prescripción extintiva por ser contrario al interés social una prolongada situación de incertidumbre jurídica.

[11] Los tres requisitos para que se configure la prescripción extintiva, son: la existencia de un derecho que se pueda ejercitar; la falta de ejercicio o inercia por parte del titular; y el transcurso del tiempo determinado en la ley. Meléndez Guzmán v. Berríos López, 172 D.P.R. 1010, 1018 (2009).

[12] Subsiste entre las partes una obligación natural que no es exigible judicialmente. García Aponte v. ELA, 135 D.P.R. 137, 142 (1994).

Un término prescriptivo puede interrumpirse de tres maneras: mediante la correspondiente acción judicial; mediante reclamación extrajudicial; y por el reconocimiento de la deuda por parte del deudor. Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303. Una vez se interrumpe la prescripción, el término prescriptivo comienza a transcurrir nuevamente. Meléndez Guzmán v. Berríos López, supra.

La causa de acción que provee el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, para exigir la reparación de un daño extracontractual causado por culpa o negligencia tiene un término prescriptivo de un año. Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Hemos expresado que la brevedad de este término responde a que el legislador quiso dotar de mayor certeza una relación que generalmente carece de ella debido a la inexistencia de un vínculo previo entre las partes y el desconocimiento de la extensión de la obligación. Culebra Enterprise Corp. v. ELA, supra, en la pág. 950; L. Diez-Picazo, La prescripción en el Código Civil, Barcelona, Ed. Bosch, 1964, pág. 239.

De modo que, salvo que se produzca la interrupción mediante alguna de las tres formas indicadas, la reclamación para exigir responsabilidad bajo el Art. 1802 del Código Civil, supra, prescribe por el transcurso de un año. Basándonos en la teoría cognoscitiva del daño, hemos

reiterado que dicho término comienza a transcurrir una vez el perjudicado conoció –o debió conocer- que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción. Art. 1868, supra, y Art. 1869 del Código Civil, 31 L.P.R.A. sec. 5299; COSSEC et al. v. González López et al., 179 D.P.R. 793, 806 (2010); Colón Prieto v. Géigel, 115 D.P.R. 232, 247 (1984).

C. La naturaleza de la obligación por un daño extracontractual causado por una pluralidad de sujetos

Cuando dos o más deudores concurren en una misma deuda la obligación puede ser mancomunada o solidaria. En las primeras, la deuda puede ser dividida y cada deudor responde únicamente por la parte que le corresponde. En las segundas, la deuda se considera indivisible y cada deudor responde indistintamente por la totalidad de la deuda. E. Vázquez Bote, Tratado teórico, práctico y crítico de derecho privado puertorriqueño, New Hampshire, Equity Publishing Co., 1991, Vol. V, págs. 137 y 139; Carlos Lasarte, Principios de Derecho Civil, Derecho de obligaciones, 14ta ed., Madrid, Ed. Marcial Pons, 2010, T. II, págs. 31, 35-36. Asimismo, el pago efectuado por cualquiera de los deudores libera a los otros de la obligación frente al acreedor. H. M. Brau del Toro, El término prescriptivo y su interrupción en acciones en daños por responsabilidad extracontractual solidaria en el

derecho puertorriqueño, 44 (Núm. 2) Rev. C. Abo. P.R. 203, 218 (1983); Vázquez Bote, op. cit., pág. 145.

En el ámbito contractual, debido a la oportunidad que tienen las partes para determinar el alcance de su relación, el Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3101, precisa que cuando concurren dos o más deudores en una sola obligación la responsabilidad de éstos se presume mancomunada, siendo solidaria sólo cuando así se pacte expresamente.[13] De otra parte, nuestro Código Civil no preceptúa la naturaleza (mancomunada o solidaria) de la obligación que surge cuando, fuera de una relación contractual, dos o más personas quebrantan el deber general de cuidado y ocasionan, por su culpa o negligencia, un daño indivisible. No obstante, mediante jurisprudencia nos hemos encargado de suplir esta omisión. Para una mejor comprensión de la controversia que hoy atendemos, conviene examinar la trayectoria que este Tribunal ha seguido sobre el particular.

Desde comienzos del siglo pasado hemos rechazado extender al campo de la responsabilidad civil extracontractual, por inaplicable, la presunción de mancomunidad que establece el Art. 1090 del Código Civil, supra, para las obligaciones contractuales. Así, por

---

[13] El Art. 1090 del Código Civil, supra, dispone: "La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria".

ejemplo, en Cruz et al. v. Frau, 31 D.P.R. 92 (1922),
dijimos que cuando un accidente es ocasionado por la culpa
o negligencia concurrente de dos o más personas, cada una
de ellas es responsable por todo el daño. Sin embargo, fue
en García v. Gobierno de la Capital, 72 D.P.R. 138 (1951),
que evaluamos con mayor detalle la obligación que surge
para los cocausantes de un daño extracontractual, así como
sus implicaciones procesales. En aquel caso los
demandados, a quienes se les reclamó por un accidente
automovilístico, presentaron una demanda contra tercero
para incluir en el pleito al dueño del auto en que viajaba
la víctima al momento del choque. Por su parte, el tercero
demandado solicitó la desestimación aduciendo que la
reclamación en su contra estaba prescrita.

Al resolver, mantuvimos la dirección perfilada en
casos como Cruz et al. v. Frau, supra, y reiteramos que la
sentencia dictada contra dos o más cocausantes de un daño
es solidaria. Rivera v. Great Am. Indemnity Co., 70 D.P.R.
825, 828 (1950). Tomando como fundamento la equidad y el
deber de evitar el enriquecimiento injusto, extendimos la
acción de nivelación que contempla el Art. 1098 del Código
Civil, 31 L.P.R.A. sec. 1098, a los casos de
responsabilidad civil extracontractual con pluralidad de
causantes. García v. Gobierno de la Capital, supra, pág.
147. De modo que, si después de haberse adjudicado la
responsabilidad entre varios cocausantes uno de ellos

indemnizaba a la víctima en una proporción mayor a su por ciento de responsabilidad, éste podía nivelar y exigir de los demás cocausantes solidarios el reembolso de la cantidad que correspondiera a sus respectivos por cientos de responsabilidad.[14]

Aunque reconocimos que la acción de nivelación no surgía hasta que uno de los cocausantes pagaba en exceso de su participación en el daño, concluimos que mediante una demanda contra tercero podía incluirse una acción de nivelación contingente para el caso en que el tribunal llegara a determinar que ambos, demandado y tercero demandado, fueron cocausantes y el primero terminara pagando todos los daños. García v. Gobierno de la Capital, supra, págs. 147-148.

Resolvimos, además, que en aquel caso la demanda contra tercero no estaba prescrita pues aunque se instó tres años después de ocurridos los hechos, la presentación oportuna de la demanda original había interrumpido el término prescriptivo. García v. Gobierno de la Capital, supra, págs. 148-149. Para llegar a esta conclusión aplicamos al ámbito de la responsabilidad civil extracontractual el Art. 1874 del Código Civil, supra, el cual preceptúa uno de los efectos de la solidaridad: la

---

[14] El Art. 1098 del Código Civil, supra, dispone: "El pago hecho por uno de los deudores solidarios extingue la obligación. El que hizo el pago sólo puede reclamar de sus codeudores la parte que a cada uno corresponda, con los intereses de anticipo. La falta de cumplimiento de la obligación por insolvencia del deudor solidario será suplida por sus codeudores a prorrata de la deuda de cada uno".

interrupción del término prescriptivo. En lo pertinente, el Art. 1874, supra, dispone: "La interrupción de la prescripción de acciones en las obligaciones solidarias aprovecha o perjudica por igual a todos los acreedores y deudores".

El siguiente caso de gran pertinencia es Arroyo v. Hospital La Concepción, 130 D.P.R. 596 (1992). Allí, cuatro años después de haber instado la demanda, los demandantes solicitaron enmendarla para añadir como codemandados solidarios a unos médicos, quienes se opusieron y adujeron que la acción estaba prescrita. Al resolver, precisamos nuestros pronunciamientos en García v. Gobierno de la Capital, supra, y aclaramos que la presunción de mancomunidad del Art. 1090 del Código Civil, supra, no aplica al ámbito de la responsabilidad civil extracontractual, sino a las obligaciones contractuales. Asimismo, especificamos que la responsabilidad de los cocausantes de un daño indivisible es de naturaleza solidaria. Arroyo v. Hospital La Concepción, supra, págs. 604-605.

De otra parte, dijimos que en nuestro ordenamiento la solidaridad tenía un carácter homogéneo, por lo cual no distinguimos entre los efectos primarios y secundarios de la solidaridad. Arroyo v. Hospital La Concepción, supra, pág. 607. En consecuencia, concluimos que al ser aplicables todos los efectos de la solidaridad, la

interrupción del término prescriptivo frente a uno de los cocausantes —surtía efectos- por virtud del Art. 1874 del Código Civil, _supra_- contra todos los demás que fueran cocausantes solidarios del daño. Por lo tanto, aquellos cocausantes que inicialmente no hubieran sido demandados podían ser traídos posteriormente al pleito, tanto por el demandante (por vía de enmienda a la demanda) como por los demandados (a través de una demanda contra tercero). _Arroyo v. Hospital La Concepción_, _supra_, pág. 608. Por lo tanto, al disponer del caso permitimos que los demandantes trajeran a los médicos cuatro años después, pues la presentación a tiempo de la demanda original había interrumpido el término prescriptivo.

Por último, recientemente resolvimos _Fraguada Bonilla v. Hosp. Aux. Mutuo_, _supra_, caso que también versaba sobre una demanda por impericia médica. Transcurridos seis años desde la presentación de la demanda, los demandantes solicitaron enmendarla para incluir como codemandados a dos doctores, a pesar de que tenían conocimiento de la identidad y participación de éstos desde la fecha en que ocurrieron los hechos. _Fraguada Bonilla v. Hosp. Aux. Mutuo_, _supra_, en la pág. 392. Luego de que el Tribunal de Primera Instancia permitiera la enmienda, uno de los doctores solicitó que se dictara sentencia sumaria, pues la tardanza injustificada de los demandantes al reclamar seis años después constituía una falta de diligencia

crasa. No obstante, basándose en Arroyo v. Hospital La Concepción, supra, los tribunales recurridos declararon no ha lugar a la moción.

Al disponer del caso, comenzamos por reiterar que el Código Civil no establece expresamente la naturaleza de la obligación de los cocausantes de un daño extracontractual. Luego, procedimos a considerar las consecuencias de interpretar –como habíamos hecho hasta entonces- que los efectos de la solidaridad en el ámbito extracontractual se extendían para interrumpir el término prescriptivo con respecto a todo posible cocausante. El resultado era que se socavaba el principio de la prescripción, particularmente cuando en el Código Civil se establece el término breve de un año para el ejercicio de las acciones sobre responsabilidad civil extracontractual. Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, pág. 388.

Expusimos que bajo la jurisprudencia anterior se había permitido que un demandante decidiera en qué momento reclamarle a un supuesto cocausante, aún cuando el término prescriptivo para ello había transcurrido. Concluimos, pues, que la norma anterior era contraria a los fundamentos de la prescripción, facilitaba el ejercicio arbitrario y negligente de los derechos, promovía la inestabilidad en las relaciones jurídicas y permitía injusticias patentes contra los que eran demandados varios años después. Estos demandados podrían encontrarse en una

posición de indefensión debido a la pérdida de prueba o la gran dificultad para conseguirla. Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, págs. 386 y 387.

Por esa razón, revocamos la norma establecida en Arroyo v. Hospital La Concepción, supra, en cuanto a la interrupción del término prescriptivo y adoptamos la figura de la solidaridad impropia (también conocida como obligación *in solidum*) en lo atinente a la interrupción de la prescripción.[15] En consecuencia, resolvimos prospectivamente que "el Art. 1974 del Código Civil no aplica a los casos de daños y perjuicios al amparo del Art. 1802 del Código Civil", Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, pág. 389, y explicamos que en adelante:

> [E]l perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda *que proceda*, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil si desea conservar su causa de acción contra cada uno de ellos. [...] De esta forma, la presentación oportuna de una demanda contra un presunto cocausante no interrumpe el término prescriptivo contra el resto de los alegados cocausantes, porque tal efecto secundario de la solidaridad no obra en la obligación *in solidum*. Fraguada Bonilla v. Hosp. Aux. Mutuo, íd. (énfasis en el original) (citas omitidas).

---

[15] Acogiendo así la postura disidente de algunos miembros de este Tribunal que desde varios años antes venían favoreciendo este curso de acción. Véase Arroyo v. Hosp. La Concepción, supra, pág. 608 (Opinión disidente emitida por Hernández Denton, J.). Véase también García Pérez v. Corp. Serv. Mujer, 174 DPR 138, 160 (2009) (Opinión disidente emitida por Rodríguez Rodríguez, J.).

Así, este Tribunal concluyó que la adopción de la solidaridad impropia u obligación *in solidum*, en lo referente a la interrupción del término prescriptivo en acciones de daños y perjuicios, era la norma que mejor armonizaba instituciones y conceptos tan relevantes como la prescripción, la solidaridad y la teoría cognoscitiva del daño, conduciendo a un balance más equitativo entre las partes. Fraguada Bonilla v. Hosp. Aux. Mutuo, supra, pág. 391.

D. La solidaridad impropia u obligación *in solidum*

Los franceses distinguen entre los efectos primarios y secundarios de la solidaridad. Los efectos primarios se refieren a que el acreedor tiene derecho a exigir de cada codeudor el pago íntegro de la deuda y cada codeudor está obligado a así hacerlo. Asimismo, el pago realizado por cualquiera de los codeudores libera a todos de la obligación frente al acreedor. H. Mazeud, L. Mazeud & J. Mazeud, Lecciones de Derecho Civil, Buenos Aires, Eds. Jurídicas Europa-América, 1960, Vol. III, 2da parte, págs. 317-318. Por su parte, entre los efectos secundarios de la solidaridad se encuentra el que la interrupción del término prescriptivo con respecto a uno de los codeudores se extiende para afectar a todos. Josserand, Derecho Civil, Buenos Aires, Eds. Jurídicas Europa-América, 1950, T. II, Vol. I, págs. 612-615.[16]

---

[16] Véase también, G. Marty, Derecho Civil, Puebla, Pubs. de la Universidad de Puebla, 1952, Vol. II, págs. 139-141.

El Código Civil francés no establece cuál es la naturaleza de la obligación que surge cuando un daño extracontractual es causado por más de una persona. Sin embargo, la doctrina y la jurisprudencia en ese país categorizan esta obligación como una *in solidum*. H. Mazeud, L. Mazeud & A. Tunc, <u>Tratado teórico y práctico de la responsabilidad civil delictual y contractual</u>, Buenos Aires, Eds. Jurídicas Europa-América, 1977, T. II, Vol. II, págs. 595-596. Las obligaciones *in solidum* presentan los efectos primarios de la solidaridad, pero no los secundarios. De manera que cada cocausante está obligado, independientemente de su grado de culpa o por ciento de responsabilidad en el daño, a indemnizar íntegramente al perjudicado y el pago de la deuda por cualquiera de ellos libera a los demás de la obligación frente al perjudicado. Josserand, <u>op. cit.</u>, págs. 617-618. Sin embargo, al no operar los efectos secundarios de la solidaridad, el término prescriptivo tiene que ser interrumpido con respecto a cada cocausante individualmente. H. Mazeud, L. Mazeud & A. Tunc, <u>op. cit.</u>, pág. 596; H. Mazeud, L. Mazeud & J. Mazeud, <u>op. cit.</u>, págs. 327-328.

La distinción práctica entre los efectos primarios y secundarios se justifica a base del concepto de la representación. Debido al origen convenido de la solidaridad en el contexto de las obligaciones contractuales o al carácter expreso de ésta cuando se

deriva de la ley, los codeudores se consideran representantes los unos de los otros en atención a la comunidad de intereses que entre ellos existe. H. Mazeud, L. Mazeud & J. Mazeud, op. cit., págs. 315-316. Se recurre a la idea de un mandato tácito entre ellos para representarse mutuamente, pues la solidaridad fue convenida o estaba ya preceptuada en la ley. G. Ripert & J. Boulanger, Tratado de Derecho civil según el tratado de Planiol, Buenos Aires, Eds. La Ley, 1965, T. V, 2da parte (Obligaciones), págs. 534-535; Josserand, op. cit., pág. 611.

Pero cuando unas personas son codeudoras por el hecho de haber concurrido en la causación de un daño extracontractual, no existe entre ellas esa relación de representatividad. H. Mazeud, L. Mazeud & J. Mazeud, op. cit., pág. 328.[17] Cada uno responde por el todo frente al perjudicado porque, al igual que en los efectos primarios, se trata de un mismo daño indivisible. Sin embargo, cuando hablamos de los efectos secundarios de la solidaridad los actos procesales como la interrupción de la prescripción deben efectuarse de forma independiente por cada cocausante pues uno no es representante del otro.

---

[17] "Lo cierto es que la representación recíproca de los deudores solamente se justifica si existe entre ellos una comunidad de intereses; no tiene razón alguna de ser si los deudores entienden permanecer ajenos los unos a los otros y si la solidaridad les es impuesta en razón de las circunstancias, tal vez puramente fortuitas, en que nacieron sus deudas". G. Ripert & J. Boulanger, op. cit., pág. 535.

Por su parte, en España la distinción entre efectos primarios y secundarios de la solidaridad es de más reciente cuño. Fue en su sentencia de 14 de marzo de 2003 que el Tribunal Supremo español acogió expresamente la figura de la solidaridad impropia en el marco de las acciones sobre responsabilidad civil extracontractual con pluralidad de causantes.[18] Específicamente, el Tribunal Supremo español resolvió que el Art. 1974 de su Código Civil -el cual establece que la interrupción de la prescripción en las obligaciones solidarias perjudica a todos los deudores- aplica únicamente a las obligaciones solidarias propias, mas no a las impropias:

> La presente sentencia cuya deliberación originó discrepancias entre los miembros de la Sala de Justicia que la autoriza, acerca de la cuestión jurídica básica que sustenta el recurso, se dicta previa consulta a la junta general de los Magistrados de la Sala Primera del Tribunal Supremo, celebrada el día 27 de marzo de 2003, que adoptó, por amplia mayoría de votos el acuerdo que se transcribe: el párrafo primero del artículo 1.974 del Código Civil únicamente contempla efecto interruptivo en el supuesto de las obligaciones solidarias en sentido propio cuando tal carácter deriva de norma legal o pacto convencional, sin que pueda extenderse al ámbito de la solidaridad impropia, como es la derivada de responsabilidad extracontractual cuando son varios los condenados judicialmente. S. de 14 de marzo de 2003, Núm. 223/2003, Repertorio de Jurisprudencia, 2003/3645.

De manera que después de esta sentencia, el perjudicado que ha sufrido un daño extracontractual por la culpa o negligencia de varios cocausantes y que pretenda

---

[18] S. de 14 de marzo de 2003, Núm. 223/2003, Repertorio de Jurisprudencia 2003/3645.

exigir responsabilidad de todos deberá interrumpir el término prescriptivo respecto a cada uno individualmente e incluirlo en la demanda. La jurisprudencia española justifica este resultado en la falta de representatividad entre los cocausantes, aunque lo explica distinto a como lo ha hecho la doctrina francesa. Así, para el Tribunal Supremo español, a pesar de que la obligación de reparar nace una vez ocurre el daño, la solidaridad en el contexto extracontractual no se produce sino hasta que el tribunal la declara en la sentencia:

> En la solidaridad que nace convencionalmente o por disposición legal, se aplica claramente la interrupción de la prescripción a todos los deudores solidarios por aplicación del artículo 1974 del Código Civil. Pero si la solidaridad no nace sino de la sentencia, que es la llamada solidaridad impropia, la interrupción de la prescripción respecto a uno de los deudores no alcanza a otro, ya que no era deudor solidario y sólo lo fue desde la sentencia que así lo declaró, no antes. S. de 4 de junio de 2007, Núm. 662/2007, Repertorio de Jurisprudencia 2007/3612.

El Tribunal Supremo español también ha dicho que en supuestos de solidaridad impropia los efectos de la solidaridad, al igual que nacen con la sentencia, se agotan en la sentencia, por lo cual no procede extenderlos a personas que no hayan sido demandadas y condenadas. En tales casos, el por ciento de responsabilidad en el daño que se le atribuya a esas personas que no fueron demandadas y condenadas no lo asumen los cocausantes condenados solidariamente, sino que se descuenta de la

indemnización del perjudicado. S. de 17 de junio de 2002, Núm. 631/2002, Repertorio de Jurisprudencia 2002/5223;[19] S. de 21 de octubre de 2002, Núm. 967/2002, Repertorio de Jurisprudencia 2002/8770; Tratado de responsabilidad civil, 4ta ed., Pamplona, Ed. Aranzadi, 2008, T. I, pág. 988, (L. Fernando Reglero Campos, coordinador).

E. La acción de nivelación

A la relación entre el perjudicado y los cocausantes del daño se le conoce como relación externa. Como hemos dicho, tanto en la solidaridad propia como en la impropia cada cocausante tiene la obligación de responder frente al perjudicado por la totalidad de sus daños. Sin embargo, en nuestra jurisprudencia hemos distinguido la culpa de cada uno de los cocausantes, determinando su particular por ciento de responsabilidad en el daño.[20] Esta relación entre los cocausantes en función de su respectiva cuota de responsabilidad, se conoce como relación interna y dentro de ésta podría tener lugar la acción de nivelación. Rodríguez et al. v. Hospital et al., 186 D.P.R. 889, 901 (2012).

Cuando alguno de los cocausantes paga la totalidad de la condena impuesta, los demás cocausantes quedan

---

[19] Aunque esta sentencia es anterior a la de 14 de marzo de 2003 en la que se acogió sin ambages la solidaridad impropia, esta última se apoyó en la primera para sostener que la distinción entre solidaridad propia e impropia no se trataba de una nueva norma, sino que desde antes ese Tribunal había resuelto a base de dicha distinción.

[20] Asimismo, cuando no es posible atribuir un por ciento de participación preciso, lo hemos fijado por partes iguales entre todos los cocausantes. Sánchez Rodríguez v. López Jiménez, 118 D.P.R. 701, 707 (1987).

liberados de la obligación ante el perjudicado. Por ello, bajo nociones de equidad hemos reconocido la acción de nivelación a favor del cocausante que indemniza al perjudicado en una proporción mayor a su grado de culpa en el daño. Mediante esta acción el cocausante que pagó le puede reclamar a los otros el reembolso correspondiente según sus respectivos porcientos de responsabilidad. De otro modo resultaría una situación contraria al principio que prohíbe el enriquecimiento injusto. Id; US Fire Insurance v. A.E.E., 174 D.P.R. 846, 858 (2008).

Debido al carácter subsidiario de la acción de nivelación, ésta sólo procede contra aquellos que judicialmente hayan sido declarados cocausantes solidarios Por lo tanto, si un tribunal concluye que determinado demandado no tuvo culpa en el daño, éste no es cocausante y no puede haber acción de nivelación en su contra. De igual forma, si la obligación de un cocausante se extingue o deja de ser exigible, dicho cocausante queda liberado y los otros no pueden recurrir a la acción de nivelación.[21]

De otra parte, aunque la acción de nivelación surge cuando uno de los cocausantes paga en una proporción mayor a su por ciento de responsabilidad, hemos permitido el uso

---

[21] Así, hemos resuelto, por ejemplo, que cuando uno de los cocausantes transige con el perjudicado y éste lo libera de toda responsabilidad, dicho perjudicado asume el por ciento de participación de ese cocausante en el daño. S.L.G. Szendrey v. Hospicare, Inc., 158 D.P.R. 648, 656 (2003). Como los cocausantes que permanecen en el pleito no tienen que responder por el por ciento de responsabilidad del que fue liberado, cualquier acción de nivelación contra éste carece de fundamentos. Id.

de la demanda contra tercero como mecanismo procesal para traer al pleito a un presunto cocausante y viabilizar una potencial acción de nivelación contingente al resultado de la demanda. Id.; Security Ins. Co. v. Tribunal Superior, 101 D.P.R. 191, 198 (1973). Así se facilita la dilucidación de responsabilidad y se promueve la economía procesal.

No obstante, la premisa que posibilita la acción de nivelación contingente es que la causa de acción del demandante contra el tercero demandado no esté prescrita. Como vimos en algunos de los casos reseñados, esa fue la principal defensa que trataron de utilizar los terceros demandados. García v. Gobierno de la Capital, supra. Sin embargo, en aquel momento la declaramos sin lugar, pues concluimos que la demanda original presentada a tiempo había interrumpido el término prescriptivo por virtud del Art. 1874 del Código Civil, supra. Pero como veremos, esto cambió después de Fraguada v. Hosp. Aux. Mutuo, supra, al resolver que el Art. 1874 del Código Civil, supra, no aplica en las acciones sobre responsabilidad civil extracontractual con pluralidad de causantes. Pasemos ahora a aplicar este derecho a la controversia de autos.

III

En el presente caso, los recurridos instaron una demanda contra tercero para incluir al E.L.A. en el pleito. Alegaron que el E.L.A. negligentemente permitió

que el velero del señor Ramos Inchautegui permaneciera anclado sin autorización y con las luces apagadas, creando una situación de peligro que resultó en el choque de las embarcaciones. Así, sostuvieron que el E.L.A. debía responderle directamente a la demandante o, en la alternativa, a ellos por la cantidad que tuvieran que pagar como indemnización.

Ya que cualquier reclamación que la demandante pudiera tener contra el E.L.A. estaba prescrita, el Tribunal de Primera Instancia concluyó que no procedía la demanda contra tercero para que el E.L.A. le respondiera directamente a la demandante. Asimismo, resolvió que tampoco procedía para que le respondiera a los recurridos por cualquier suma que éstos tuvieran que pagar. Razonó que los recurridos no podían revivir la causa de acción de la demandante indirectamente por vía de una acción de nivelación contingente. Por lo tanto, dictó sentencia parcial y desestimó la demanda contra tercero.

Los recurridos apelaron esta determinación. El Tribunal de Apelaciones sostuvo la desestimación de la demanda contra tercero en lo referente a incluir en el pleito al E.L.A. para que le respondiera a la demandante. Sin embargo, revocó aquella parte de la sentencia parcial que desestimó la acción de nivelación contingente. Expresó que en Fraguada v. Hosp. Aux. Mutuo, supra, este Tribunal mantuvo la vigencia de los efectos primarios de la

solidaridad, por lo cual los recurridos estaban sujetos a pagar la totalidad de los daños independientemente de que la acción de la demandante estuviera prescrita a favor del E.L.A. Inconforme, el E.L.A. recurrió ante nos y señaló que el tribunal intermedio incidió al permitir una acción de nivelación contingente, a pesar de que frente a ella la causa de acción original estaba prescrita.

Efectivamente, en _Fraguada v. Hosp. Aux. Mutuo_, _supra_, dijimos que cada uno de los cocausantes demandados continuaba siendo responsable de pagar la totalidad de la deuda que procediera. Asimismo, en el escolio 13 de esa Opinión aclaramos que la presunción de mancomunidad que establece el Art. 1090 del Código Civil, _supra_, no aplica en el ámbito de la responsabilidad civil extracontractual. Por lo tanto, la obligación que surge cuando un daño es causado por una pluralidad de sujetos es de carácter solidaria. Sin embargo, especificamos que se trata de una solidaridad impropia en el sentido de que la interrupción del término prescriptivo frente a un cocausante no tiene el efecto de interrumpir automáticamente el término prescriptivo para todos los demás cocausantes del daño que fueran conocidos por el demandante.

Entendimos que esta norma era la que mejor armonizaba con una institución tan relevante en nuestro ordenamiento jurídico como lo es la prescripción. El Art. 1868 del Código Civil, _supra_, fija un término prescriptivo de un

año para las acciones sobre responsabilidad civil extracontractual y la brevedad de ese término fue deliberadamente pretendida por el legislador como una manera de contrarrestar la incertidumbre que caracteriza a este tipo de obligación. Resultaba, pues, incompatible que un demandante se cruzara de brazos y, amparándose en la interrupción automática, pretendiera tiempo después traer al pleito a un cocausante cuya responsabilidad conocía o podía conocer. Además, precisamos que la teoría cognoscitiva del daño seguía estando vigente, por lo que si durante el proceso judicial un demandante advenía en conocimiento de la responsabilidad de un presunto cocausante, podía enmendar la demanda para incluirlo como demandado.

El Tribunal de Apelaciones interpretó nuestras expresiones en Fraguada v. Hosp. Aux. Mutuo, supra, como susceptibles de permitir una acción de nivelación contingente en una situación como la de autos en que la reclamación original sobre daños y perjuicios ha prescrito con relación al tercero demandado. Sin embargo, ello no es compatible con lo que este Tribunal resolvió. Aunque en Fraguada v. Hosp. Aux Mutuo, supra, no se trataba de una demanda contra tercero sino de una enmienda a la demanda promovida por el demandante una vez había transcurrido el término prescriptivo, el problema sobre prescripción que allí discutimos aplica de manera similar.

Es decir, debido a que la reclamación sobre daños y perjuicios es la causa de acción principal y la acción de nivelación es subsidiaria y dependiente, si la primera no está disponible por motivo de prescripción, la segunda se torna improcedente. "No puede permitirse indirectamente, por vía de tercero, lo que está impedido en una acción directa". González v. Multiventas, 165 D.P.R. 873, 883 (2005); Cortijo Walter v. Fuentes Fluviales, 91 D.P.R. 575, 581 (1964). Al prescribir la reclamación sobre daños y perjuicios a favor de un cocausante, éste queda liberado de tener que responder pues su responsabilidad deja de ser exigible.[22] Lo contrario violentaría los fundamentos de Fraguada v. Hosp. Aux. Mutuo, supra.

El propósito de promover el reclamo diligente de los derechos, la seguridad en el tráfico jurídico y la estabilidad de las relaciones en nuestro ordenamiento se vería frustrado de resolver como lo hizo el Tribunal de Apelaciones. Una de las consecuencias sería que aún cuando un perjudicado conociera que su daño fue causado por la culpa o negligencia de varias personas, pueda cruzarse de brazos, demandar sólo a uno y cobrar de éste la totalidad de la indemnización. A su vez, ese cocausante podría presentar una acción de nivelación contingente durante el

---

[22] "Así, cuando transcurre el periodo de tiempo que fija la ley se extingue la acción para hacer efectivo el derecho en cuestión y el deudor queda liberado de su obligación en tanto puede negarse a cumplir con ella fundamentado en que ésta fue reclamada tardíamente". Meléndez Guzmán v. Berríos López, supra, en la pág. 1018. Véase también García Aponte et al. v. E.L.A. et al., 135 D.P.R. 137, 142 (1994).

pleito o reclamarle –después de dictada la sentencia- a otros posibles cocausantes, escenarios que pueden ocurrir años después de presentada la demanda en vista de que el derecho a nivelar no surge hasta que el cocausante paga más de lo que le corresponde. El análisis que hicimos en Fraguada v. Hosp. Aux. Mutuo, supra, para armonizar la responsabilidad solidaria, la prescripción y la teoría cognoscitiva del daño habría sido en vano.

Por el contrario, si la reclamación del perjudicado contra determinado cocausante está prescrita, ninguno de los cocausantes demandados a tiempo puede traerlo al pleito para que le responda al perjudicado. Al estar prescrita a su favor la causa de acción, ese cocausante no está sujeto a responderle al perjudicado. Art. 1830 del Código Civil, 31 L.P.R.A. sec. 5241.[23] Asimismo, los cocausantes demandados tampoco pueden, mediante demanda contra tercero, presentar en su contra una acción de nivelación contingente, pues al extinguirse el derecho del perjudicado a exigir responsabilidad de ese cocausante, cesa la obligación para los demás cocausantes de responder por la parte de aquel en el daño. "La Regla 12.1 de Procedimiento Civil [sobre la demanda contra tercero] no crea, extiende o limita derechos sustantivos". Gen. Accid. Ins. Co. P.R. v. Ramos, supra, pág. 534; Colón v. Coop. de Seguros Múltiples de P.R., supra, pág. 571.

---

[23] "También se extinguen del propio modo por la prescripción los derechos y las acciones, de cualquier clase que sean". Art. 1830 del Código Civil, supra.

En tal caso, el por ciento de responsabilidad de ese cocausante que no fue demandado a tiempo con conocimiento del demandante se resta de la totalidad y el perjudicado será indemnizado por el valor monetario de la diferencia que resulte. De la totalidad de esa diferencia responderán solidariamente todos los cocausantes demandados dentro del término prescriptivo. Lo anterior es consecuencia de la solidaridad impropia u obligación *in solidum* según la adoptamos en Fraguada v. Hosp. Aux. Mutuo, supra:

> [E]l perjudicado podrá recobrar de cada cocausante demandado la totalidad de la deuda *que proceda*, porque los efectos primarios de la solidaridad se mantienen. Sin embargo, deberá interrumpir la prescripción en relación con cada cocausante por separado, dentro del término de un año establecido por el Art. 1868 del Código Civil si interesa conservar su causa de acción contra cada uno de ellos. Fraguada v. Hosp. Aux. Mutuo, supra, pág. 389.

Así, por ejemplo, si un daño extracontractual es ocasionado por cuatro cocausantes solidarios a quienes el perjudicado demanda de manera oportuna, una vez el tribunal adjudica los respectivos por cientos de responsabilidad (supongamos que le atribuye 25% a cada uno) el perjudicado tiene derecho a cobrar de cualquiera de ellos la totalidad (el 100%) de la indemnización. De la misma forma, si uno de los cuatro paga toda la deuda, el que pagó puede nivelar con los demás y requerir el reembolso correspondiente a sus respectivos por cientos de responsabilidad.

Por el contrario, si en el ejemplo anterior el perjudicado (a pesar de conocer que sufrió un daño, quiénes lo causaron y los elementos necesarios para ejercitar su causa de acción) insta una demanda dentro del término prescriptivo sólo contra dos cocausantes, pero con respecto a los otros dos la acción prescribe, los dos cocausantes demandados a tiempo no pueden valerse de una demanda contra tercero para traer al pleito a los que quedaron fuera. Al estar prescrita a su favor la causa de acción original, los cocausantes que no fueron demandados a tiempo no son responsables frente al perjudicado y, como consecuencia, no se configura una relación de solidaridad con respecto a los cocausantes demandados. De resolver el tribunal que, en efecto, el daño fue ocasionado por los cuatro cocausantes y fijar el por ciento de culpa de cada uno en 25%, del total (100%) de las participaciones en el daño restará el 50% de culpa correspondiente a los dos cocausantes con respecto a los cuales la acción prescribió. El perjudicado sólo tendrá derecho al restante 50% correspondiente a la participación en el daño de los cocausantes que demandó a tiempo. La indemnización equivalente a ese 50% podrá cobrarla de cualquiera de los dos cocausantes demandados, quienes responden solidariamente.[24]

---

[24] Siguiendo este ejemplo, cualquiera de los dos cocausantes demandados a tiempo que indemnice al perjudicado en una proporción mayor a su 25% de responsabilidad, podrá nivelar con el otro y exigir el reembolso correspondiente.

Con respecto a la controversia que hoy atendemos, la conclusión a la cual llegamos es la que más claramente se deriva del análisis y los fundamentos en los que este Tribunal se basó al resolver Fraguada v. Hosp. Aux. Mutuo, supra. La solidaridad en el ámbito de la responsabilidad civil extracontractual se mantiene, pero se trata de una solidaridad impropia en lo que a la interrupción del término prescriptivo se refiere. Por ende, el perjudicado debe interrumpir el término prescriptivo de un año que establece el Art. 1868 del Código Civil, supra, frente a cada presunto cocausante individualmente si es que pretende conservar su causa de acción contra cada uno de ellos.

Como corolario, un cocausante demandado no puede traer al pleito mediante demanda contra tercero a un presunto cocausante solidario con respecto a quien la causa de acción del perjudicado prescribió. Prescrita a su favor la causa de acción, ese alegado cocausante no está sujeto a responderle al perjudicado ni tampoco, mediante una acción de nivelación, a los cocausantes demandados. "La prescripción constituye la forma de extinción de un derecho debido a la inercia en ejercerlo por su titular, durante un tiempo determinado". Santiago v. Ríos Alonso, supra, pág. 188; Galib Frangie v. El Vocero de P.R., supra, pág. 566. Si después de celebrado el juicio el tribunal concluyera que el presunto cocausante que no fue

demandado a tiempo en efecto contribuyó a producir el daño, el por ciento de responsabilidad que se le atribuya se descontará de la indemnización del perjudicado. Ello, ya que fue su propia falta de diligencia -al no interrumpir el término prescriptivo cuando estaba en posición de hacerlo- lo que provocó que perdiera el derecho a reclamar ese por ciento de responsabilidad.

Por último, debemos recalcar que en nuestro ordenamiento jurídico rige la teoría cognoscitiva del daño. Por lo tanto, el término prescriptivo para exigir responsabilidad por un daño extracontractual comienza a transcurrir cuando el perjudicado conoció –o debió conocer de haber procedido diligentemente- la existencia del daño, quién lo causó, así como los elementos necesarios para ejercer efectivamente la causa de acción. Si en el transcurso del proceso judicial el perjudicado adviene en conocimiento de la responsabilidad de un presunto cocausante, será desde ese momento que el término prescriptivo comenzará a transcurrir en cuanto a este último.

Asimismo, mantenemos la acción de nivelación que por primera vez reconocimos en García v. Gobierno de la Capital, supra. Dicha acción operará en la relación interna entre los cocausantes solidarios del daño cuando cualquiera de ellos indemnice al perjudicado en una proporción mayor a la que le corresponde. Sin embargo,

para que proceda la acción de nivelación contra un cocausante es un requisito que éste sea responsable solidariamente frente al perjudicado, pues sólo así puede haber derecho a exigir el reembolso por su responsabilidad concurrente en el daño. Lo anterior no sucede cuando la causa de acción sobre daños y perjuicios ha prescrito a su favor.

Al repasar los hechos del presente caso, no hay controversia en cuanto a que la demandante no le reclamó extrajudicialmente al E.L.A. Por su parte, en la demanda incluyó como codemandados a los recurridos Carlos Juan Suárez González y Carlos Suárez Miranda como conductor y propietario, respectivamente, de la lancha en la cual se encontraba cuando ocurrió el accidente. Demandó también al señor Ramos Inchautegui como dueño del velero contra el que chocó la embarcación. Surge del expediente que el alegado accidente ocurrió el 24 de julio de 2011. Sin embargo, no fue hasta el 22 de agosto de 2013 -cuando los recurridos presentaron la demanda contra tercero- que el E.L.A. tuvo conocimiento de alguna reclamación en su contra. Así lo determinó el Tribunal de Primera Instancia y ello no fue controvertido.

Al haber transcurrido el término para que la demandante pueda exigir responsabilidad del E.L.A., la demanda contra tercero no procede. Aún presumiendo que el E.L.A. haya actuado negligentemente -sobre lo cual no

estamos haciendo determinación alguna-, al estar prescrita la causa de acción, el E.L.A. no está sujeto a responderle a la demandante ni a los recurridos. Por lo tanto, no se satisfacen ninguno de los requisitos que contempla la Regla 12.1 de Procedimiento Civil, _supra_, para que proceda una demanda contra tercero. Así pues, la demanda contra tercero presentada por los recurridos en el presente caso debe ser desestimada.

IV

Por los fundamentos expuestos, se revoca la decisión del Tribunal de Apelaciones en cuanto permite la acción de nivelación contingente contra el E.L.A., mediante la demanda contra tercero. Se reinstala la sentencia parcial del Tribunal de Primera Instancia en todos sus extremos.

Se dictará Sentencia de conformidad.


                                Maite D. Oronoz Rodríguez
                                     Jueza Presidenta

CC-2014-723

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Adria Maldonado Rivera

  Recurrida

       v.

Carlos Suárez y otros

  Recurrido           CC-2014-723

Estado Libre Asociado de Puerto Rico

  Peticionario

SENTENCIA

En San Juan, Puerto Rico, a 28 de marzo de 2016.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la decisión del Tribunal de Apelaciones en cuanto permite la acción de nivelación contingente contra el E.L.A., mediante la demanda contra tercero. Se reinstala la sentencia parcial del Tribunal de Primera Instancia en todos sus extremos.

Así lo pronunció y manda el Tribunal y lo certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente y hace constar la siguiente expresión a la que se une el Juez Asociado señor Rivera García:

"La Jueza Asociada señora Pabón Charneco disiente por las razones que expresara en su Opinión Disidente en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, 186 DPR 365, 396-412 (2012).

La adopción "parcial" de la doctrina de las obligaciones *in solidum* por este Tribunal sin mayor análisis sobre sus

repercusiones - en vez de abrazar las herramientas que sí reconoce nuestro ordenamiento jurídico - ha dislocado esas instituciones y conceptos que pretendía armonizar. El caso de autos es ejemplo de cómo los préstamos tomados de otros ordenamientos jurídicos pueden afectar los derechos de las partes, dificultar la labor de nuestros tribunales y requerir constantes remiendos.

Tras comenzar a disiparse los efectos del carácter prospectivo de *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, este caso ha requerido que una mayoría del Tribunal aborde jurisprudencialmente algunas de las serias interrogantes causadas por la adopción de la doctrina. Sus efectos son desconocidos por nuestro ordenamiento y ahora no se ven enmarcados por la coherencia que el Código Civil proveyó por décadas a la figura de la solidaridad. Véanse por ejemplo, *Rodríguez Caraballo v. Departamento de Transportación y Obras Públicas,* KLCE201501080 (sobre cuándo surge la causa de acción contra el cocausante no demandado)*; Soto López v. Supermercados Econo Corp.,* KLCE201400476; *R&C Painting Corporation v. Consejo de Titulares*, KLAN201401831, KLAN201401836 (sobre la aplicación de *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, a casos de responsabilidad absoluta por producto defectuoso); *Ramírez-Ortiz v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, 994 F.Supp.2d 218 (2014)(sobre la existencia de solidaridad perfecta entre hospital y doctor cuando el paciente confía su salud al hospital). Véase además, J.J. Álvarez González, *Responsabilidad Civil Extracontractual*, 83 (Núm. 3) Rev. Jur. U.P.R. 893, 899 (2014)(Análisis del caso *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra, en cuanto al efecto de mancomunidad de la Opinión, los posibles incidentes de colusión entre los cocausantes, la complicación litigiosa, la dificultad para alcanzar transacciones extrajudiciales, y el aumento en el riesgo de que el demandante incurra en temeridad)".

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo