Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| RITA MARCHESE TORRES<br>Parte Apelante<br><br>v.<br><br>PROFESSIONAL HOSPITAL GUAYNABO, INC., HOSPITALES A, B Y C, CARLOS BEAUCHAMP IGLESIAS Y OTROS<br>Parte Apelada | KLAN202500223 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2024CV04780<br><br>Sobre:<br>Impericia Médica |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Rodríguez Flores, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de mayo de 2025.

Comparece la Sra. Rita Marchese Torres (Sra. Marchese o parte apelante) y solicita que revoquemos la Sentencia emitida el 11 de febrero de 2025, notificada el 18 de igual mes y fecha, por el Tribunal de Primera Instancia, Sala de Bayamón. Mediante el referido dictamen, el TPI declaró con lugar las solicitudes de desestimación presentadas por la parte apelada y desestimó, con perjuicio, la demanda incoada por la Sra. Marchese Torres.

Por los fundamentos que expondremos a continuación, se confirma la sentencia apelada.

**I.**

El 16 de agosto de 2024, la Sra. Marchese Torres presentó una demanda sobre daños y perjuicios en contra del Dr. Carlos Beauchamp Iglesias (Dr. Beauchamp Iglesias), el Dr. Fermín Hernández Abad (Dr. Hernández Abad) y Professional Hospital en Guaynabo, Inc. (Professional Hospital), en la que reclamó una indemnización por los daños y perjuicios sufridos por la muerte de su esposo, el Sr. José Manuel Ibarra García (Sr. Ibarra García), ante

la alegada negligencia de los demandados en el diagnóstico y tratamiento de éste.

El 18 de noviembre de 2025, Professional Hospital presentó *Moción de Desestimación bajo la Regla 10.2 de Procedimiento Civil*[1]. En primer lugar, alegó que estaba cobijado por la inmunidad y límites de responsabilidad provistos por la legislación federal y estatal, entre estos, el *Public Readiness and Emergency Preparedness Act*, 42 USC sec. 247d6d(a)(1)), también conocido como el *PREP Act*, el *Coronavirus Aid, Relief, Economic and Security Act*, también conocido como el *CARES Act*, la Ley Núm. 53-2020 y las Órdenes Ejecutivas del Gobernador de Puerto Rico; por lo que solicitó la desestimación del pleito. En segundo lugar, arguyó que, si se tomaban como ciertas las alegaciones de la demanda, la reclamación por impericia médica estaba prescrita, pues según alegado en la demanda, los hechos que motivaron la causa de acción ocurrieron el 17 de agosto de 2021, cuando la Sra. Marchese Torres llevó a su esposo a la sala de emergencia de Professional Hospital, y esta cursó una carta de interrupción de término prescriptivo el 13 de agosto de 2022; no obstante, ésta presentó la demanda el 16 de agosto de 2024.

Por su parte, el 5 de diciembre de 2024, el Dr. Hernández Abad presentó *Moción Uniéndonos a Moción de Desestimación bajo la Regla 10.2 de Procedimiento Civil*[2]. En esta, alegó que estaba cobijado por la inmunidad de las leyes federales PREP y CARES, *supra*, y levantó la defensa de prescripción.[3] El 11 de diciembre de 2024, la Sra. Marchese Torres presentó oposición a la solicitud de desestimación de Professional Hospital.[4] En síntesis, esta expuso las

---

[1] Véase, Anejo 4 del apéndice de la parte apelante, págs. 28-38.
[2] Anejo 5 del apéndice de la parte apelante, págs. 39-40.
[3] En cuanto a la defensa de prescripción, el Dr. Hernández Abad alegó que nunca recibió carta extrajudicial para interrumpir dicho término.
[4] Anejo 6, págs. 41-60. Junto con la oposición, la Sra. Marchese Torres anejó copia de la carta extrajudicial dirigida a Professional Hospital.

razones por las cuales no procedía la desestimación solicitada a la luz de las leyes federales y estatales aplicables. En cuanto a la controversia de la prescripción, ésta explicó que notificó una carta extrajudicial a Professional Hospital, por lo que el término que vencía el 17 de agosto de 2022 quedó nuevamente interrumpido por un año más. En virtud de ello, esta presentó una primera demanda el 16 de agosto de 2023 (BY2023CV04580), de la cual posteriormente solicitó el desistimiento sin perjuicio y, luego, instó nuevamente su causa de acción el 16 de agosto de 2024 (BY2024CV04780).

El 12 de diciembre de 2024, notificada el 24 de igual mes y fecha, el TPI emitió una *Orden* en la que denegó las solicitudes de desestimación presentadas y ordenó a los demandados presentar sus alegaciones responsivas.[5] Oportunamente, el Dr. Hernández Abad solicitó reconsideración de la referida orden.[6] Igualmente, tanto Professional Hospital[7] como el Dr. Beauchamp Iglesias[8] solicitaron reconsideración de dicha orden. En cumplimiento con lo ordenado por el TPI, la Sra. Marchese Torres presentó su oposición[9] a las solicitudes de reconsideración en las que reiteró los argumentos vertidos en su oposición a la desestimación.

El 11 de febrero de 2025, notificada el 18 de igual mes y fecha, el TPI emitió la *Sentencia* apelada. En esta, el foro apelado reconsideró la *Orden* del 12 de diciembre de 2024, conforme solicitado por los demandados en sus escritos de reconsideración. Luego, el TPI concluyó que, aun tomando como ciertas las alegaciones de la demanda, la amplia inmunidad conferida por el

---

[5] Anejo 7, pág. 63. Por su parte, el Dr. Beauchamp Iglesias presentó *Contestación a Demanda.* En síntesis, negó la mayoría de las alegaciones de la demanda, y presentó entre otras defensas afirmativas, que la demanda estaba prescrita y que también le aplicaba la defensa de inmunidad.
[6] Anejo 10, págs. 138-148.
[7] Anejo 9, págs. 67-137.
[8] Anejo 12, págs. 162-163.
[9] Anejo 11, págs. 149-161.

PREP Act impide la causa de acción instada por la Sra. Marchese Torres. Como fundamento de su determinación, el foro apelado consignó lo siguiente:

> Surge de las propias alegaciones de la demanda y de los escritos presentados que en el presente caso se cumplen todos los criterios necesarios para aplicar la inmunidad bajo el PREP Act, a saber: (1) los doctores Carlos Beauchamp Iglesias, Fermín Hernández Abad y el hospital PHG son personas cubiertas; (2) la prueba diagnóstica de COVID-19 suministrada al señor Ibarra García y las decisiones sobre qué contramedidas deben usarse para tratar al paciente en función del resultado negativo de su prueba constituyen contramedidas cubiertas; (3) el reclamo de los demandantes tiene relación causal con el uso de las contramedidas y con el proceder de las partes codemandadas; (4) las contramedidas adoptadas cualifican como una actividad recomendada; y (5) las contramedidas se utilizaron durante la vigencia de la declaración de emergencia.
>
> Por consiguiente la presente reclamación cae dentro del amplio ámbito de la inmunidad que la PREP Act le confiere.

Como fundamento adicional, el TPI resolvió que la causa de acción contra los doctores demandados estaba prescrita, pues la Sra. Marchese Torres no interrumpió extrajudicialmente el término prescriptivo contra éstos. Además, determinó que tanto la primera demanda presentada (BY2023CV04580, eventualmente desistida) como la demanda del recurso que nos ocupa (BY20240CV04780) estaban prescritas, pues ambas se presentaron fuera del término prescriptivo de un año.

Así, en virtud de lo anterior, el TPI declaró con lugar las solicitudes de desestimación presentadas por los demandados y desestimó, con perjuicio, la demanda en todos sus extremos.

Insatisfecha con el dictamen, la Sra. Marchese Torres acude ante este foro y formuló los siguientes señalamientos de error:

Primer Error:

> Erró el Tribunal de Primera Instancia al concluir que, conforme al Public Readiness and Emergency Preparedness Act, la utilización en el tratamiento del paciente de una contramedida reconocida en la ley (Prueba de COVID) actuaba como una carta blanca para

avalar cualquier negligencia cometida por los apelados, concediéndoles inmunidad absoluta sobre cualquier acto negligente que cometieran en el tratamiento del paciente, independientemente de si su cuadro clínico requería tomar medidas adicionales para tratar su condición.

Segundo Error:

Erró el Tribunal de Primera Instancia al desestimar la demanda a base de una moción al amparo de la Regla 10.2 de Procedimiento Civil, en una etapa tan temprana del litigio sin dar oportunidad a realizar descubrimiento de prueba, delimitar claramente los hechos del caso e inclusive enmendar la demanda de ser necesario.

Tercer Error:

Erró el Tribunal de Primera al determinar que el caso contra los doctores apelados estaba prescrito, negándose a aplicar la doctrina de Velilla v. Pueblo Supermarkets y su progenie y al aplicar lo resuelto en Fraguada v. Auxilio Mutuo a pesar de que dicho caso fue superado por las disposiciones del nuevo Código Civil de 2020.

El 16 de abril de 2025, Professional Hospital y el Dr. Hernández Abad presentaron sus correspondientes alegatos en oposición al recurso que nos ocupa. Igualmente, el 7 de mayo de 2025, el Dr. Beachamp Iglesias presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

**II.**

**A. Doctrina del campo ocupado**

Como norma general, los tribunales estatales tienen jurisdicción concurrente con los tribunales federales para atender asuntos que surjan al amparo de las leyes federales. *González v. Mayagüez Resort & Casino*, 176 DPR 848, 856 (2009), citando a *Tafflin v. Levitt,* 493 U.S. 455 (1990). Sin embargo, la jurisdicción es exclusiva ante un asunto de derecho federal que el Congreso haya dispuesto expresamente para ello o si surge claramente de la ley la intención de privar a los foros estatales de autoridad sobre dicho asunto federal. *Íd.*

Nótese que, el Congreso federal puede ocupar el campo en un asunto federal y excluir la regulación local. *Íd.* Cabe señalar que el fin de la doctrina de ocupación del campo es evitar conflictos regulatorios y, con ello, fomentar una política uniforme. *Íd.* Nótese que, las complicaciones jurisdiccionales bajo la doctrina de campo ocupado tienen dos vertientes. La legislativa versa sobre quién tiene la facultad para regular, mediante legislación, determinada materia, hecho o situación. Mientras que, la jurisdicción judicial representa cuál foro (estatal o federal) está autorizado a considerar las controversias suscitadas. *Íd.*, citando a *Rodríguez v. Overseas Military*, 160 DPR 270, 279 (2009).

### B. PREP Act

El PREP Act, *supra*, ofrece una protección de responsabilidad frente a demandas y reclamos cuando quien invoca la inmunidad es una persona cubierta, que utilizó una contramedida en el curso de una actividad recomendada durante la vigencia de la amenaza de salud pública, y que existe una relación causal entre el reclamo y la contramedida ejercida. 42 U.S.C.A. §247d-6d.

Una persona cubierta bajo el PREP Act, *supra,* cobija a los planificadores de programas o a las personas calificadas. 42 U.S.C.A. §247d-6d(i)(2)(B). Los planificadores de programas son las personas que realizan funciones como supervisar o administrar un programa relacionado a la administración, dispensación, distribución, provisión o uso de una contramedida de seguridad, de un producto pandémico o epidémico calificado. 42 U.S.C.A. §247d-6d(i)(6). Mientras que, son personas calificadas bajo el PREP Act, *supra,* los profesionales de la salud autorizados o aquellas personas con facultad para recetar, administrar o dispensar las contramedidas cubiertas. 42 U.S.C.A. §247d-6d(i)(8). Para efectos de esta legislación, persona incluye tanto individuos como corporaciones. 42 U.S.C.A. §247d-6d(i)(5).

De otra parte, el PREP Act, *supra,* define una contramedida cubierta como un producto pandémico o epidémico cualificado, una contramedida de seguridad, una droga,[10] producto biológico o dispositivo autorizado para uso de la emergencia o aquel dispositivo de protección respiratoria que se considere de uso prioritario durante la emergencia de salud pública. 42 U.S.C.A. §247d-6d(i)(1). Además, un producto pandémico o epidémico calificado se refiere, entre otros, a aquella droga, producto biológico o dispositivo manufacturado, utilizado, diseñado, desarrollado para diagnosticar, mitigar, prevenir, tratar o curar una pandemia o epidemia, o para limitar sus efectos dañinos. 42 U.S.C.A. §247d-6d(i)(7).

Sobre el amplio alcance de la inmunidad que acarrea el PREP Act, *supra,* el Tribunal de Apelaciones de Estados Unidos para el Noveno Circuito resolvió lo siguiente en *Maney v. Brown,* 91 F.4th 1296 (9no Cir. 2024):

> The PREP Act does not explicitly define what it means to administer a countermeasure to an individual under § 247d-6d(a)(1). The phrasing "administration to ... an individual of a covered countermeasure" could refer only to the act of physically giving a countermeasure to a particular person— for example, injecting someone with a vaccine shot. However, in § 247d-6d(a)(2)(B), the Act provides that the scope of immunity under paragraph (1) includes various activities with a causal relationship to the administration of a countermeasure beyond injecting someone with a vaccine. Most significantly, subsection (a)(2)(B) lists several terms, including "administration," without reference to "an individual." This is consistent with the expansive causal relationship the subsection provides; for example, the "design, development," "manufacture," and "distribution" of a vaccine are multiple links removed in the chain of events from the ultimate injecting of an individual with a vaccine. By referring to "administration ... of [a covered] countermeasure," in the context of a list that expands the conduct within the Act's scope of immunity, and without requiring a direct link *to an individual,* subsection (a)(2)(B) broadens the scope of immunity to administrative activities other than the physical act of directly injecting a particular person with a vaccine.

La única excepción a la inmunidad bajo el PREP Act, *supra,* es la muerte o las lesiones físicas graves causadas por la mala

---

[10] Según lo define la Sección 201(g)(1) del *Federal Food, Drug, and Cosmetic Act,* 21 U.S.C. 321(g)(1).

conducta intencional. 42 U.S.C.A. §247d-6d (c)(1)(A) y (B). Cabe resaltar que, durante la vigencia de una declaración de emergencia de salud pública, ningún Estado puede promover o hacer cumplir una disposición que entre en conflicto con algún requisito relacionado a la contramedida cubierta. 42 U.S.C.A. §247d-6d(b)(8).

III.

Adelantamos que, luego de examinar detenidamente el recurso ante nuestra consideración, evaluar los alegatos de las partes y sus respectivos apéndices y, a la luz del derecho aplicable, resolvemos basándonos en el primer señalamiento de error, pues con ellos disponemos de la totalidad del recurso. Nos explicamos.

En su primer señalamiento de error, la Sra. Marchese Torres alega que el foro primario incidió al concluir que, en virtud del PREP Act, *supra*, tanto el Hospital como los médicos codemandados gozaban de inmunidad absoluta sobre cualquier acto negligente que cometieran en el tratamiento del Sr. Ibarra García, independientemente de si su cuadro clínico requería tomar medidas adicionales para tratar su condición. Ésta sostiene que la inmunidad que confiere el PREP Act, *supra,* no cobija los alegados actos negligentes en que incurrieron los demandados al no brindar un tratamiento oportuno al Sr. Ibarra García, lo que causó su muerte. Veamos.

Según reseñamos anteriormente, el campo está ocupado por el PREP Act, *supra*, ante una reclamación por pérdida, relacionada a la emergencia de salud que ocasionó el COVID-19, causada o derivada de la administración o uso de una contramedida cubierta. Cabe reiterar que, el PREP Act, *supra*, es una legislación federal que concedió inmunidad de responsabilidad y demanda a los demandados de epígrafe, como "personas cubiertas" autorizadas para administrar, entregar, distribuir o dispensar contramedidas cubiertas, tras una declaración de emergencia.

Debemos resaltar que, la aplicación el PREP Act, *supra*, desplaza toda regulación estatal ya que ningún Estado puede establecer, hacer cumplir o mantener en vigor una disposición de ley que entre en conflicto con la declaración de emergencia y que guarde relación con la contramedida cubierta. Es de notar que, la cláusula de prelación del PREP Act, *supra*, aplicó durante el periodo de vigencia de la declaración de emergencia de salud, lo cual en Puerto Rico fue desde el 12 de marzo de 2020 hasta el 11 de mayo de 2023. Por consiguiente, ante unos hechos ocurridos el 17 de agosto de 2021, evidentemente el PREP Act, *supra*, estaba en vigor.

Surge del expediente que, en el presente caso, se cumplen todos los criterios necesarios para aplicar la inmunidad bajo el PREP Act, a saber: (1) el doctor Hernández Abad, el doctor Beauchamp Iglesias y Professional Hospital son personas cubiertas; (2) la prueba diagnóstica de COVID-19 suministrada al señor Ibarra García y las decisiones sobre qué contramedidas deben usarse para tratar al paciente en función del resultado negativo de su prueba constituyen contramedidas cubiertas; (3) el reclamo de la Sra. Marchese Torres tiene relación causal con el uso de la contramedida y con el proceder de la parte apelada; (4) la contramedida adoptadas cualifican como una actividad recomendada; y (5) la contramedida se utilizó durante la vigencia de la declaración de emergencia.

En virtud de lo anterior, el foro primario actuó correctamente al dictaminar que las reclamaciones de la Sra. Marchese Torres están relacionadas con el uso y administración de contramedidas cubiertas, empleadas por los codemandados como parte del tratamiento del Sr. Ibarra García ante una prueba administrada de COVID-19, según definidas en el PREP Act, *supra*. Por consiguiente, también fue acertada la determinación del TPI de que la presente reclamación cae dentro del ámbito de la inmunidad que dicha

legislación confiere. En vista de ello, el foro apelado actuó correctamente al desestimar la demanda instada.

IV.

Por los fundamentos anteriormente expuestos, se confirma la sentencia apelada.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.  El juez Sánchez Ramos emite por escrito Voto Disidente.

Lcda. Lilia M. Oquendo Solís<br>Secretaria del Tribunal de Apelaciones

legislación confiere. En vista de ello, el foro apelado actuó correctamente al desestimar la demanda instada.

IV.

Por los fundamentos anteriormente expuestos, se confirma la

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

RITA MARCHESE TORRES

Apelante

v.

PROFESSIONAL HOSPITAL
GUAYNABO, INC.,
HOSPITALES A, B Y C,
CARLOS BEAUCHAMP
IGLESIAS Y OTROS

Apelados

KLAN202500223

*Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón

Caso Núm.:
BY2024CV04780

Sobre:
Impericia Médica

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

**VOTO DISIDENTE DEL JUEZ SÁNCHEZ RAMOS**

Erró el Tribunal de Primera Instancia ("TPI") al desestimar, en esta etapa, la acción de referencia. La demanda contiene una causa de acción que, de su faz, es viable, y la cual no es incompatible con la ley federal que provee inmunidad por daños causados por el uso de una contramedida dirigida a la prevención, diagnóstico o tratamiento del COVID. Tampoco están prescritas las reclamaciones contra los médicos demandados, a la luz de la solidaridad perfecta entre estos y el hospital. Veamos.

I.

Contrario a lo razonado por el TPI, y propuesto por los demandados, la administración de una prueba de COVID a un paciente que llega a una sala de emergencias de un hospital no concede inmunidad por daños causados por negligencia no relacionada, parcial o totalmente, con la administración de la prueba. Por ejemplo, si una persona llegase a sala de emergencias con una herida de bala en el estómago, y le administran una prueba de COVID que arroja negativo, ello no concede inmunidad por cualquier negligencia independiente en lo relacionado con el tratamiento por la herida de bala.

En este caso, la demandante alega que, independientemente del resultado de la prueba, los demandados fueron negligentes al no tratar adecuadamente a un paciente que llegó a la sala de emergencias con "dificultad respiratoria, tos, fuerte dolor de espalda, pecho presionado, fiebre, dolor de cabeza, agotamiento [y] debilidad" (párrafo 7 de la demanda). Se alegó, además, que, a pesar de estos síntomas, el paciente no fue hospitalizado y, en vez, fue "enviado a descanso en la casa la misma noche" con la instrucción de tomar medicinas "over the counter" (párrafo 8 de la demanda).

Naturalmente, es imposible, en esta etapa, saber si realmente hubo o no negligencia al respecto. Ello necesariamente dependería de los hechos que en su día se pudiesen probar, y del estándar aplicable de buena práctica médica en este tipo de situación. No obstante, lo alegado claramente presenta una causa de acción de su faz viable, la cual es independiente de lo relacionado con la administración, y el resultado, de la prueba de COVID.

Más aún, e independientemente de lo anterior, tampoco está claro, como parecen suponer los demandados, que estos tendrían inmunidad por cualquier decisión tomada sobre la base del resultado negativo a la prueba de COVID. Los falsos negativos (o positivos) son inevitables en la administración de cualquier prueba de laboratorio pues, aparte del margen de error intrínseco a cualquier prueba, también puede estar presente un producto defectuoso o una administración negligente de la prueba. Por tanto, sobre la base del cuadro clínico completo del paciente, incluida la prueba negativa a COVID, los demandados no necesariamente tendrían inmunidad por cualquier negligencia en el diagnóstico y tratamiento del paciente en este caso.

En fin, si bien la ley federal provee inmunidad por el uso de las medidas tomadas por personal salubrista para combatir o prevenir el COVID, ello responde a la novedad de la enfermedad y de las

pruebas, vacunas y medicinas involucradas. En este caso, sin embargo, la alegación no es que el daño ocurrió como consecuencia de la utilización, o no utilización, de una de estas medidas a la luz de un diagnóstico de COVID, sino por la completa falta de tratamiento, mucho menos uno adecuado, a la luz de la totalidad del cuadro clínico del paciente (incluido el negativo a la prueba de COVID administrada).

## II.

Por otro lado, también erró el TPI al concluir que las reclamaciones contra los médicos demandados están prescritas. Ello porque la reclamación extrajudicial al hospital demandado también surtió efecto interruptor en cuanto a los médicos, porque el paciente acudió al hospital en busca de atención médica, y los médicos intervinieron sin elección previa del paciente, lo cual establece una relación solidaria propia entre el hospital y los médicos. Veamos.

En *Rodríguez et al. v. Hospital et al.,* 186 DPR 889, 900 (2016), se reiteró y recalcó que una acción para exigir responsabilidad profesional a un médico no es distinta a la de un caso ordinario de daños y perjuicios por negligencia al amparo del Artículo 1802 del Código civil, *supra.* Véase, además, *Martínez Marrero v. González Droz,* 180 DPR 579 (2011). Por lo tanto, al igual que cualquier otra causa de acción por daños y perjuicios, la reclamación por impericia médica requiere que la parte demandante establezca por preponderancia de la evidencia, creída por el juzgador, que los actos de negligencia, falta de cuidado o impericia del médico causaron el daño reclamado. *Íd.*

Durante las últimas décadas, se han establecido distintas bases para imponerle responsabilidad a los hospitales por los daños que puedan sufrir los pacientes. *Fonseca v. HIMA,* 184 DPR 281 (2012); *Sagardía de Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484 (2009);

*Blás v. Hosp. Guadalupe,* 146 DPR 267 (1998); *Márquez Vega v. Martínez Rosado,* 116 DPR 397, 404–405 (1985); *Núñez v. Cintrón,* 115 DPR 598 (1984); *Hernández v. La Capital,* 81 DPR 1031, 1038 (1960). Lo anterior se sustenta al amparo de la doctrina de responsabilidad vicaria.

Así pues, los hospitales generalmente responden por los actos de los médicos que ofrecen sus servicios en sus facilidades, particularmente cuando el paciente acude al hospital sin tener una relación previa con el médico. Los hospitales siempre responden vicariamente por los médicos que son sus empleados. También responden, de ordinario, por los actos negligentes de los médicos que, aunque no son sus empleados, son parte de su facultad (staff) y están disponibles para consultas de otros médicos. *Márquez Vega,* 116 DPR a la pág. 407; *Núñez,* 115 DPR a la pág. 606. Incluso, los hospitales ordinariamente responden también por los concesionarios de franquicias exclusivas para prestar servicios en el hospital cuando cometen actos de impericia médica. *Sagardía de Jesús,* 177 DPR a las págs. 515-516. Son ejemplos de estos concesionarios los anestesiólogos, radiólogos y proveedores de servicios de sala de emergencia. *Íd.* Respecto a estos, el hospital es responsable por haber seleccionado a ese personal y tenerlo ofreciendo servicios a los pacientes. *Íd.*

Según adelantado, en lo referente a los médicos que no son empleados del hospital, pero gozan del privilegio de usar las instalaciones del hospital para recluir a sus pacientes privados, el hospital responderá por los actos de dichos médicos en las siguientes circunstancias. **El hospital responde si le asignó el paciente al médico, lo cual típicamente ocurre cuando el paciente acudió directamente al hospital en búsqueda de ayuda médica y este le proveyó al paciente los facultativos médicos que lo atendieron**. *Sagardía de Jesús, supra; Márquez Vega, supra.*

En ese caso, el hospital responde vicaria y solidariamente con el médico responsable del acto de impericia, sin importar si este último es (o no) un empleado del hospital, o uno a quien el hospital le haya concedido una franquicia para brindar servicios médicos especializados a los pacientes de este, o uno que es miembro de la facultad (staff) del hospital y a quien este llama en consulta para atender al paciente. *Íd.*

Por otra parte, el hospital ordinariamente no responderá vicariamente por los actos del médico si este no es su empleado **y** si se trata de un paciente privado de dicho médico que acude al hospital en virtud de la relación previa entre el paciente y dicho médico. *Sagardía de Jesús,* 177 DPR a la pág. 513; *Márquez Vega,* 116 DPR a las págs. 402–405.

La anterior distinción responde a que, cuando el paciente acude al hospital, es dicha institución la que selecciona qué médico le atenderá, no teniendo el paciente ninguna participación al respecto.  Por tanto, en esas circunstancias, el hospital debe responder vicariamente por los actos del médico.  Es decir, cuando el paciente visita el hospital en búsqueda de asistencia, existe una garantía implícita de que los médicos seleccionados son competentes y capacitados para asistir adecuadamente al paciente. Más aún, desde el punto de vista del paciente, quien lo atiende es el hospital, y no médicos distintos e independientes los unos de los otros y, en esta situación, es con el hospital con quien el paciente tiene una relación contractual.  En otras palabras, para fines del paciente, el hospital se proyecta como una comunidad que ofrece servicios de salud en conjunto. *Márquez Vega,* 116 DPR a las págs. 407-408. (Citas omitidas).

Por su parte, la "prescripción extintiva es una institución de derecho sustantivo que extingue el derecho a ejercer determinada causa de acción". *Maldonado Rivera v. Suarez y otros,* 195 DPR 182,

192 (2016). En otras palabras, la prescripción extintiva es materia de naturaleza sustantiva, regida por nuestro Código civil. *SLG García–Villega v. ELA et al,* 190 DPR 799, 812 (2014); *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365 (2012).

De ordinario, en acciones de daños y perjuicios, cuando coincide más de un causante de un daño, el agraviado deberá interrumpir la prescripción en relación con cada co-causante por separado, dentro del término de un año, si interesa conservar su causa de acción contra cada uno de ellos. Por ello, la presentación oportuna de la demanda contra un presunto co-causante ordinariamente no tiene el efecto de interrumpir el término prescriptivo contra el resto de los alegados co-causantes del daño. *Fraguada Bonilla, supra.* (Citas omitidas).

No obstante, recientemente se aclaró que, **en atención a la particular naturaleza de la relación entre quien responde vicariamente por los actos de otra persona, la reclamación por daños contra uno de ellos sí interrumpe en cuanto al otro**. *Pérez Hernández v. Lares Medical Center,* 207 DPR 965, 989-990 (2021).

En efecto, en el citado caso se resolvió, en lo aquí pertinente, que entre un patrono y su empleado existe una relación de solidaridad propia que se distingue de la solidaridad impropia que de ordinario existe entre los co-causantes de un daño extracontractual. En otras palabras, **cuando aplica la responsabilidad vicaria que se establece bajo el Código civil, *supra,* <u>no</u> es de aplicación la solidaridad impropia establecida en *Fraguada Bonilla*,** *supra,* y su progenie.

Por tanto, como cuestión de derecho, erró el TPI al concluir que la demanda está prescrita en cuanto a los médicos demandados. Ello porque se alegó, y no se ha intentado controvertir, que el paciente acudió a la sala de emergencias del hospital en busca de atención médica, y allí se le asignó a los médicos demandados para

brindarle tratamiento en sus facilidades. No estamos ante una situación en que se alegue que el paciente, debido a su relación previa con los médicos, fue hospitalizado por alguno de estos como paciente privado.

Adviértase que, según expuesto arriba, los hospitales son responsables por las actuaciones negligentes de los médicos que prestan servicios a los pacientes que acuden a la institución, como ocurrió aquí, independientemente de si el médico es empleado, es parte de la facultad médica, o simplemente cuenta con privilegios para ejercer allí.

En este caso, se alegó que el paciente acudió a la sala de emergencias del hospital en busca de asistencia médica urgente. Dado que, en este tipo de circunstancias, el paciente no elige a los facultativos que atenderán su diagnóstico y tratamiento, el hospital deberá responder vicaria y solidariamente por las acciones de los facultativos médicos. Por tanto, al existir solidaridad propia o perfecta entre quien es negligente, y quien responde vicariamente por dicha negligencia, la interrupción del término prescriptivo en este caso en cuanto al hospital también tuvo el efecto de interrumpir el término en cuanto a los médicos.

III.

Por los fundamentos anteriormente expuestos, procedía la revocación de la sentencia apelada.

En San Juan, Puerto Rico, a 22 de mayo de 2025.


ROBERTO SÁNCHEZ RAMOS
JUEZ DE APELACIONES