Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **JUAN CARLOS SOLTERO VENEGAS Y OTROS**<br><br>Parte recurrida<br><br>v.<br><br>**BEATRICE ALEIDA CAUTIÑO ANTONGIORGI**<br><br>Parte peticionaria | **TA2025CE00591** | ***CERTIORARI***<br>Procedente del Tribunal de Primera Instancia, Sala Superior de **Carolina**<br><br>Caso Núm. **CA2022CV01461**<br><br><br>Sobre:<br>Cobro de Dinero Ordinario |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Romero García y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 21 de octubre de 2025.

Comparece ante nos Beatrice Cautiño Antongiorgi, en adelante, Cautiño Antongiorgi o peticionaria, solicitando que revisemos la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de Carolina, del 11 de agosto de 2025. En la misma, el Foro Primario declaró *"No Ha Lugar"* la solicitud de desestimación de la peticionaria.

Por los fundamentos que expondremos a continuación, *denegamos* la expedición del recurso.

### I.

Según los documentos y alegaciones que obran en el expediente, Cautiño Antongiorgi es propietaria del apartamento número 305 en el Condominio Coral Beach en el Municipio de Carolina.[1] Por otro lado, los recurridos Juan Soltero Venegas y María García-Barbón Rodríguez, son propietarios del apartamento número 105 del mismo condominio.

---

[1] SUMAC, Entrada Núm. 1.

Según surge de los alegatos, y los documentos del expediente judicial, desde el año 2016, los recurridos han reclamado por varias vías alegados daños en su propiedad, a causa de filtraciones de agua.[2] Estos presentaron su reclamo a la administración del Condominio Coral Beach, pero finalmente recurrieron al Departamento de Asuntos del Consumidor, en adelante, DACo, mediante querella el 12 de febrero de 2020.[3]

El proceso ante la precitada agencia se benefició de una inspección a los apartamentos de las partes, así como los apartamentos número 205 y 505.[4] Del mismo surgió un informe pericial. Luego de celebrada una vista administrativa, el DACo emitió una *"Resolución"* el 18 de enero de 2022.[5] Según la peticionaria, de este dictamen no surge que la filtración objeto de la controversia provenga únicamente de su apartamento. No obstante, es la contención de la parte recurrida que del informe pericial y el dictamen de DACo apuntan a que la filtración es responsabilidad de la peticionaria.

Luego de unos esfuerzos infructuosos de recobrar los daños a través de la aseguradora de Cautiño Antongiorgi,[6] el 9 de mayo de 2022, los recurridos presentaron una *"Demanda"* contra la peticionaria, por Cobro de Dinero y Daños y Perjuicios.[7] Luego de varios asuntos procesales que no requieren atención en este momento, el 9 de febrero de 2024 comenzó el descubrimiento de prueba.[8] Se les concedió sesenta (60) días a las partes para ello. El Foro Recurrido celebró múltiples vistas para la Conferencia con Antelación al Juicio y una Vista Transaccional. En particular, uno de estos señalamientos, llevado a cabo el 8 de abril de 2025, la

---

[2] SUMAC, Entrada Núm. 1.
[3] SUMAC, Entrada Núm. 1, Anejo 2.
[4] SUMAC, Entrada Núm. 1, Anejo 2.
[5] SUMAC, Entrada Núm. 1, Anejo 2.
[6] SUMAC, Entrada Núm. 1, Anejo 1.
[7] SUMAC, Entrada Núm. 1.
[8] SUMAC, Entrada Núm. 38.

peticionaria hizo un planteamiento con relación a falta de parte indispensable en el pleito.[9] El TPI-Carolina le concedió a esta hasta el 30 de abril de 2025 para presentar una moción dispositiva al respecto.

En cumplimiento de orden, Cautiño Antongiorgi, el 14 de mayo de 2025, esta radicó su *"Moción de Desestimación al Amparo de la Regla 10.2 de las Reglas de Procedimiento Civil Inciso (6)"*.[10] En síntesis, arguyó que el pelito de epígrafe no podría resolverse sin la comparecencia de los titulares de los apartamentos número 205 y 505 del Condominio Coral Beach. El 21 de julio de 2025, los recurridos se opusieron a la misma.[11]

Posteriormente, el 11 de agosto de 2025, el TPI-Carolina notificó una *"Resolución"* declarando *"No Ha Lugar"* la solicitud de desestimación de la peticionaria.[12] Inconforme, el 12 de agosto de 2025, Cautiño Antongiorgi radicó una *"Moción Solicitando Reconsideración"* ante el Foro Primario.[13] Sin embargo, el 16 de septiembre de 2025, la misma fue declarada *"No Ha Lugar"*.[14]

Así las cosas, la peticionaria recurrió ante nos mediante recurso de *certiorari*, haciendo los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A RECONOCER QUE LA RECLAMACIÓN EN EL PRESENTE CASO ADOLECE DE FALTA DE PARTES INDISPENSABLES.
>
> **SEGUNDO ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ANTICIPAR QUE NO DETERMINARÁ RESPONSABILIDAD A LOS TITULARES DE LOS APARTAMENTOS 205 Y 505.
>
> **TERCER ERROR:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ANTICIPAR QUE NO ADJUDICARÁ LOS PORCIENTOS DE RESPONSABILIDAD SEGÚN

---

[9] SUMAC, Entrada Núm. 64.
[10] SUMAC, Entrada Núm. 65.
[11] SUMAC, Entrada Núm. 72.
[12] SUMAC, Entrada Núm. 74.
[13] SUMAC, Entrada Núm. 75.
[14] SUMAC, Entrada Núm. 81.

CORRESPONDA, EN INCUMPLIMIENTO CON LO REQUERIDO EN EL ORDENAMIENTO VIGENTE.

El 15 de agosto de 2025, este Tribunal emitió una *"Resolución"* concediendo a la parte recurrida el término reglamentario dispuesto en la Regla 37 del Reglamento del Tribunal de Apelaciones para oponerse a expedición del recurso.[15] No habiendo comparecido los recurridos ante nos, procedemos a examinar el recurso con los documentos que obran en autos.

## II.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174-175 (2020).

Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, *en casos de relaciones de familia*, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el

---

[15] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 56-57, 215 DPR ___ (2025).

Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

(Énfasis suplido).

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

La precitada Regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Reglamento del Tribunal de Apelaciones, supra, pág. 59. *BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023).

Sin embargo, ninguno de los mencionados criterios es determinante por sí solo para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados, "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Finalmente, precisa señalar que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, ni constituye una adjudicación en sus méritos. Al contrario, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia. *Torres Martinez v. Torres Ghigliotty*, supra, pág. 98.

### III.

La peticionaria acude ante esta Curia solicitando que revisemos la determinación del TPI-Carolina de denegar su solicitud de desestimación, por falta de parte indispensable. Aduce que, en el caso de marras, la comparecencia de otros titulares del Condominio Coral Beach es un requisito *sine qua non* para la resolución del reclamo en daños de los recurridos, provocados por la filtración objeto de la controversia. El Foro Recurrido razonó que los derechos y responsabilidades de los titulares aludidos no quedarían afectados por el dictamen que en su día recaiga, con relación al caso de autos.

Sabido es que una parte significativa del ejercicio revisor ejercido por este Foro al momento de considerar un recurso discrecional de esta naturaleza es evaluar la etapa en la que se encuentra. Además, debemos pasar juicio sobre cualquier actuación que contemple perjuicio, error o abuso discrecional.

Luego de un examen sosegado del expediente ante nos, concluimos que estamos impedidos de expedir el mismo. Justipreciamos que una evaluación en los méritos de los errores planteados en este recurso usurparía indebida e irrazonablemente la adjudicación del caso ante el Foro Primario. Además, lo cierto es que no hemos identificado perjuicio, parcialidad o abuso de discreción en la determinación del TPI-Carolina.

Según lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y los criterios evaluativos de la Regla 40 de nuestro

Reglamento, *supra,* estamos impedidos de entrar en los méritos de la polémica ante nos, si no se demuestra fracaso irremediable de la justicia. Este Tribunal ha evaluado detenidamente el expediente y el tracto procesal del caso de epígrafe, y no encontramos razón en derecho que justifique nuestra intervención en esta etapa de los procedimientos.

**IV.**

Por los fundamentos antes esbozados, *denegamos expedir el recurso solicitado.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos está conforme, pues el TPI actuó correctamente al concluir que no hay ausencia de parte indispensable en este caso. La norma es que los co-causantes de un daño son responsables solidariamente ante el perjudicado y **este puede instar una acción contra uno o todos los responsables**. *Maldonado Rivera v. Suárez y otros,* 195 DPR 182, 195-196 (2016); *García Pérez v. Corp. Sev. Mujer,* 174 DPR 138, 151 (2008) (énfasis suplido). Por lo tanto, está bien establecido que "los co-causantes de un daño no son partes indispensables, cuya falta de acumulación conlleve la desestimación con perjuicio de la acción. No es necesario demandarlos a todos. Un deudor solidario no es parte indispensable." J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da ed., San Juan, Publicaciones JTS, 2011, Tomo II, pág. 695. La ausencia de las partes señaladas por la peticionaria en nada impide que el TPI adjudique si esta en efecto responde por los daños alegados ni le impide a dicho foro conceder un remedio completo a la parte demandante, en cuanto a la parte demandada se refiere. En cualquier caso, la parte peticionaria tuvo, pero no aprovechó, la oportunidad de incluir a las partes ausentes como tercero demandados; también podría instar una acción de nivelación, de ser

encontrada responsable por el TPI, siempre que dicha acción no hubiese prescrito.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones