Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JOSÉ M. DÍAZ DE JESÚS, ET ALS.<br><br>**Apelante**<br><br>V.<br><br>CENTRO MÉDICO DEL TURABO, INC., ET ALS.<br><br>**Apelado** | TA2026AP00089 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil. Núm. BY2021CV04727<br><br>Sobre: Daños y Perjuicios (Impericia Médico-Hospitalaria |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 19 de febrero de 2026.

El 26 de enero de 2026, el Sr. Jose M. Díaz De Jesús; la Sra. Romarys Díaz Alvarado, por sí y, conjuntamente con el Sr. Omar Oliveras Ramírez, en representación de sus hijos menores K.O.O.D. y V.P.O.D.; la Sra. Rosaris Díaz Alvarado, por sí y, conjuntamente con el Sr. Ángel Alexis Ramírez Maldonado, en representación de sus hijos menores A.A.R.D. y A.S.R.D.; el Sr. Rafael José Díaz Alvarado, por si y, conjuntamente con la Sra. Gloribel Cruz Martínez, en representación de su hija menor de edad A.I.D.C.; así como el Sr. Jose Emmanuel Díaz Alvarado y el Sr. Jose Miguel Díaz Vallines (en conjunto, los apelantes) comparecieron ante nos mediante un recurso de *Apelación* y solicitaron la revisión de la *Sentencia Sumaria Parcial* emitida el 12 de enero de 2026 y notificada el 13 de enero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).

Mediante aludido dictamen, el TPI determinó que el Dr. Fabio Ricci Gorbea (doctor Ricci o apelado) no fue incluido en la reclamación dentro del término prescriptivo a pesar de que los

apelantes tenían los elementos necesarios para ejercer su causa de acción. Por lo cual, declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por el doctor Ricci y, en consecuencia, desestimó, con perjuicio, la causa de acción de los adultos respecto a mencionado galeno.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

## I.

El 17 de noviembre de 2021, los apelantes presentaron una *Demanda* sobre impericia médica contra el Centro Médico del Turabo, Inc. h/n/c HIMA San Pablo Bayamón (HIMA), el Dr. Jaime Busquets Villegas (doctor Busquets), el Dr. Carlos E. Martínez Duran (doctor Martínez), el Sindicato de Aseguradores para la Suscripción Conjunta de Responsabilidad Médico-Hospitalaria (SIMED), Puerto Rico Medical Defense Insurance Company, entre otros (en conjunto los demandados).[1] Allí, alegaron que, el 3 de agosto de 2020, la Sr. Rosa Iris Alvarado Torres (señora Alvarado) fue llevada a la sala de emergencia de HIMA, por problemas cardiovasculares y gastrointestinales.

A raíz de lo anterior, sostuvieron que a la señora Alvarado se le realizó distintas intervenciones médicas, tales como pruebas de laboratorios, suministros de medicamentos, entre otros procedimientos clínicos. No obstante, manifestaron que, el 7 de agosto de 2020, la paciente fue trasladada a la Unidad de Cuidado Intensivo, pero tras dos arrestos cardiorrespiratorios sucumbió a su condición el 8 de agosto de 2020. Así las cosas, esbozaron que la muerte de la señora Alvarado fue el resultado de la negligencia médica por parte de los demandados. Por lo cual, solicitaron

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.

distintas partidas en concepto de daños físicos, angustias y sufrimiento mentales.

Finalmente, señalaron que las causas de acciones reclamadas por los apelantes por los eventos previamente alegados dieron margen a la radicación de una demanda el 26 de julio de 2021, que interrumpió el término prescriptivo, bajo el alfanumérico civil núm. BY2021CV2880 y que el 21 de octubre de 2021, fue desistida voluntariamente.

Después de varios trámites innecesarios pormenorizar, el 11 de diciembre de 2023, los apelantes presentaron una *Demanda Enmendada* a los efectos de incluir a HIMA San Pablo Captive Insurance Company Limited.[2] Posteriormente, el 1 de marzo de 2024, los apelantes presentaron una *Segunda Demanda Enmendada*.[3] Mediante esta, enmendaron la reclamación para sustituir a un demandado desconocido por el doctor Ricci y para incluir los menores apelantes previamente enunciados.

En respuesta, el 13 de junio de 2024, el doctor Ricci presentó su *Contestación a Segunda Demanda Enmendada*.[4] En específico, negó cualquier imputación de acto u omisión negligente en el tratamiento médico. Además, agregó que la causa de acción en su contra estaba prescrita por haberse radicado fuera del término prescriptivo dispuesto en nuestro ordenamiento jurídico.

Tras varios incidentes procesales, el 22 de diciembre de 2025, el doctor Ricci presentó una *Moción de Sentencia Sumaria Parcial*.[5] En primer lugar, enumeró veintidós (22) hechos que a su juicio no estaban en controversia. Luego, alegó que, conforme a estos hechos, surgía de que los apelantes tenían conocimiento de que él había intervenido en el tratamiento de la señora Alvarado desde que se

---

[2] *Véase*, Entrada Núm. 86, SUMAC TPI.
[3] *Véase*, Entrada Núm. 100, SUMAC TPI.
[4] *Véase*, Entrada Núm. 113, SUMAC TPI.
[5] *Véase*, Entrada Núm. 146, SUMAC TPI.

radicó el caso civil núm. BY2021CV02880 el 26 de julio de 2021. Por lo que, señaló que, al no habérsele incluido en la *Demanda* del 17 de noviembre de 2021, los términos prescriptivos en cuanto a él no quedaron interrumpidos. Como resultado, arguyó que la acción en su contra estaba prescrita para la fecha que finalmente fue traído al pleito, a saber, el 1 de marzo de 2024.

Por su parte, el 27 de diciembre de 2025, los apelantes presentaron su *Oposición a Moción de Sentencia Sumaria Parcial por alegada prescripción* [...].[6] Allí, argumentaron que la reclamación en contra del doctor Ricci no estaba prescrita porque bajo la teoría cognoscitiva del daño, el cómputo prescriptivo comenzaba a transcurrir cuando se contaba con los elementos necesarios para poder ejercitar la causa de acción. Así, señalaron que los apelantes carecían de estos elementos hasta el 3 de mayo de 2023, una vez que el doctor Busquets rectificó su testimonio anterior y declaró que el apelado había sido el cardiólogo de la paciente desde la consulta inicial hasta su fallecimiento. Por tanto, razonaron que el doctor Ricci fue traído oportunamente al pleito, dentro del término prescriptivo aplicable.

Evaluada las posturas de ambas partes, el 12 de enero de 2026, el TPI emitió una *Sentencia Sumara Parcial* que fue notificada el 13 de enero de 2026.[7] En primer lugar, formuló las siguientes determinaciones de hechos:

> 1. El 26 de julio de 2021 y luego el 27 de julio de 2021 se presentó Demanda y Demanda Enmendada, respectivamente, en el caso Civil Núm. BY2021CV02880 de José Díaz de Jesús y otros vs Centro Médico del Turabo y otros.
>
> 2. En dicha Demanda (BY2021CV02880) figuraron como demandantes los siguientes: José Díaz de Jesús, Romaris Díaz Alvarado, Rosaris Díaz Alvarado, Rafael José Díaz Alvarado, José Miguel Díaz Vallines y José Emmanuel Díaz Alvarado.

---

[6] *Véase*, Entrada Núm. 150, SUMAC TPI.
[7] *Véase*, Entrada Núm. 152, SUMAC TPI.

3. Las partes demandadas en dicho caso fueron los siguientes: Centro Médico del Turabo Inc. h/n/c HIMA San Pablo Bayamón, Dr. Roberto Vélez Bermúdez, Dr. Jaime Busquets Villegas, Dr. Carlos Martínez Durán, Dr. Oscar Valentín, Dr. Edwin Mora Ruiz, Dr. Fabio Ricci Gorbea, Puerto Rico Medical Defense, y varios demandados de nombres desconocidos y/o ficticios.

4. El caso Civil Núm. BY2021CV02880 fue desistido sin perjuicio el 21 de octubre de 2021.

5. La Sentencia en el caso Civil Núm. BY2021CV02880 fue dictada el 21 de octubre de 2021 y notificada el 22 de octubre de 2021.

6. Por dichos hechos, se volvió a radicar una nueva Demanda el 17 de noviembre de 2021 en el caso de epígrafe número BY2021CV04727.

7. En este caso los demandantes incluidos fueron: José Díaz de Jesús, Romaris Díaz Alvarado, Rosaris Díaz Alvarado, Rafael José Díaz Alvarado, José Miguel Díaz Vallines, José Emmanuel Díaz Alvarado.

8. Los demandados incluidos en esta Demanda fueron los siguientes: Centro Médico del Turabo Inc., Dr. Jaime Busquets Villegas, Dr. Carlos Martínez Durán, SIMED, Puerto Rico Medical Defense, varios demandados de nombres desconocidos y/o ficticios. 9. En el presente caso, el Dr. Fabio Ricci Gorbea, a pesar de que en la primera demanda radicada en el caso BY2021CV02880 había sido incluido y se habían formulado alegaciones de negligencia, no fue incluido.

10. El 5 de diciembre de 2023 la parte demandante solicitó permiso para enmendar la Demanda.

11. El 11 de diciembre de 2023 la parte demandante presentó la Demanda Enmendada con el fin de sustituir el nombre de la aseguradora Optima Insurance Company Limited.

12. En dicha Demanda Enmendada se incluyeron los mismos demandantes y demandados, pero se sustituyó uno de los nombres ficticios por la compañía "Optima Insurance Company Limited".

13. El 1 de marzo de 2024 la parte demandante presentó "Moción Solicitando se Permita Enmendar la Demanda" bajo el fundamento de que a través de unas transcripciones del récord médico su perito hizo señalamientos de negligencia de uno de los médicos de nombre ficticio, Dr. Fabio Ricci, y para incluir unos demandantes menores de edad.

14. Dicha Segunda Demanda Enmendada fue radicada el mismo día 1 de marzo de 2024.

15. En la Segunda Demanda Enmendada fueron incluidos como demandantes los mismos antes expuestos, y además fueron incluidos como codemandantes los menores: Kevin Omar Olivera Díaz,

Valeria Olivera Díaz, Adrián Ramírez Díaz, Andrea Ramírez Díaz, Alejandra Díaz Cruz.

16. En la Segunda Demanda Enmendada se incluyó por primera vez al Dr. Fabio Ricci.

17. Desde el 18 de octubre de 2021 la parte demandante tenía un informe pericial en el cual su perito tuvo la oportunidad de evaluar el expediente médico del Hospital HIMA San Pablo de Bayamón y en dicho informe hizo referencia a evaluación del cardiólogo.

18. Desde la radicación de la Demanda en el caso de BY2021CV02880, la parte demandante tenía conocimiento de que el Dr. Fabio Ricci Gorbea intervino como médico.

19. La autopsia del presente caso tiene fecha 10 de agosto de 2020. 20. Se alega en la alegación número 8 de la demanda que el 3 de agosto de 2020 la Sra. Rosa Iris Alvarado Torres fue llevada a sala de emergencias de HIMA San Pablo en Bayamón con síntomas de un posible síndrome coronario agudo y problemas gastrointestinales.

21. Rosa Iris Alvarado Torres falleció el 8 de agosto de 2020.

Conforme a lo anterior, juzgó que se desprendía claramente que desde el 26 de julio de 2021, fecha que se radicó la demanda en el caso civil núm. BY2021CV02880, los apelantes ya tenían conocimiento de que el doctor Ricci había intervenido en el tratamiento de la señora Alvarado y que sospechaban que este había incurrido en algún posible acto u omisión negligente que pudiera estar sujeto a una causa de acción sobre daños y perjuicios.

A pesar de ello, expuso que el doctor Ricci no fue traído al pleito sino hasta el 1 de marzo de 2024, a más de dos (2) años desde que se radicó la *Demanda* de epígrafe. Así pues, determinó que la reclamación de los adultos apelantes en contra de aludido médico estaba prescrita. A tales efectos, declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por el doctor Ricci y, en consecuencia, desestimó con perjuicio la demanda presentada en su contra por los adultos apelantes.

En desacuerdo, el 26 de enero de 2026, los apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

**Erró el TPI al reducir la teoría cognoscitiva a una mera "sospecha", "conocimiento de servicios" o "posible testigo", cuando el umbral correcto y lo que activa el término prescriptivo es contar con los elementos necesarios para ejercitar efectivamente la causa de acción.**

**Erró el TPI al resolver el asunto de la prescripción mediante el mecanismo de sentencia sumaria, a pesar de existir controversias de hechos materiales sobre el conocimiento de los elementos necesarios y la debida diligencia.**

**Erró el TPI al desviar el análisis hacia las Reglas 13.3 y 15.4 (enmiendas y retroactividad), como si fuera un caso de identidad desconocida o de enmienda tardía, cuando lo decisivo era la teoría cognoscitiva del daño, esto es, cuándo se reunieron los elementos necesarios para ejercitar efectivamente la acción y si existía controversia material sobre conocimiento y diligencia.**

Atendido el recurso, el 27 de enero de 2026, emitimos una *Resolución* concediéndole a la parte apelada hasta el 17 de febrero de 2026 para presentar su posición en cuanto al recurso. Oportunamente, el 17 de febrero de 2026, el doctor Ricci presentó su *Alegato de la Parte Apelada en Oposición a Apelación* y negó que el TPI cometiera los errores que los apelantes le imputaron.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

**II.**

**-A-**

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de

hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012). Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una cuestión que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Aponte Valentín et al. v. Pfizer Pharm,* 208 DPR 263, 277 (2021).

En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". *Cruz Vélez v. CEE y otros*, 206 DPR 694, 745 (2021). Dicho esto, para que proceda una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos

en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, *supra*, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al., supra*, pág. 677. Por el contrario, esa persona viene obligada a enfrentar la moción de su adversatario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 432 (2013). Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria. Al amparo de dicha regla, la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al., supra,* pág. 300 citando a: *Cuadrado Lugo v. Santiago Rodríguez,*

126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 757 (2012). Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa. *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 129 (2012).

Ahora bien, según *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits*, deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos

adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-B-**

La prescripción extintiva es una institución de derecho sustantivo que extingue el derecho de ejercer determinada causa de acción. *SLG Haedo-López v. SLG Roldan-Rodríguez,* 203 DPR 324, 336 (2019). Sobre el particular, el Art. 1861 del Código Civil de 1930, 31 LPRA sec. ant. 5291 establece que "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley".[8] Así, **una vez se agota un término prescriptivo se extingue el derecho a ejercer la causa de acción y la persona sujeta a responder queda exonerada**. (Énfasis suplido) *Maldonado Rivera v. Suárez y otros*, 195 DPR 182*,* 193 (2016). En ese sentido, la prescripción extintiva es una forma

---

[8] El Código Civil de 1930 fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020. Sin embargo, para propósitos de la disposición de este recurso estaremos citando el Código Civil derogado, pues los hechos ocurrieron durante la vigencia del Código Civil del 1930.

de extinguir las obligaciones. *SLG García-Villega v. ELA et al.,* 190 DPR 799, 814 (2014). Ahora bien, esta figura de derecho sustantivo tiene como finalidad castigar la dejadez en el ejercicio de los derechos y evitar la incertidumbre en las relaciones jurídicas. Íd., pág. 813.

En lo pertinente al asunto ante nos, las acciones por impericia profesional son las que nacen cuando una persona desempeña su oficio, profesión u ocupación sin la debida prudencia o diligencia, o sin poseer la habilidad requerida. *Colón Gorbea v. Sánchez Hernández et al.*, 202 DPR 760, 768 (2019). Reiteradamente, el Tribunal Supremo ha resuelto que las acciones en daños y perjuicios por impericia profesional son de naturaleza extracontractual. Íd. A tales efectos, el Art. 1868 del Código Civil de 1930, 31 LPRA sec. ant. 5298, dispone que **las obligaciones derivadas de la culpa o negligencia –Art. 1802– prescriben en el término de un (1) año desde que lo supo el agraviado**. (Énfasis suplido). A tenor con lo anterior, se ha desarrollado la teoría cognoscitiva del daño, la cual establece que los términos para incoar una causa de acción comienzan a transcurrir una vez el perjudicado conoció o debió conocer el daño, quién fue el autor y, además, desde que éste conoce los elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado Rivera v. Suárez y otros, supra*, pág. 194.

Ahora bien, cabe precisar que, nuestro ordenamiento jurídico permite la interrupción de los términos prescriptivos. *Meléndez Guzmán v. Berríos López*, 172 DPR 1010, 1019 (2008). Conforme a ello, el Art. 1873 del Código Civil de 1930, 31 LPRA sec. ant. 5303, en lo medular, expone que la prescripción de las acciones se interrumpe por su ejercicio ante los tribunales. **Así pues, una vez interrumpida, el término comienza a transcurrir nuevamente.** (Énfasis suplido) Íd., pág. 1019.

**III.**

Mediante la discusión conjunta del primer y segundo señalamiento de error, los apelantes sostuvieron que el TPI realizó una aplicación errada de la teoría cognoscitiva del daño y a su vez, que incidió al resolver el asunto de prescripción sumariamente toda vez que existían hechos medulares en controversia. Primeramente, señalaron que, a pesar de haber realizado su debida diligencia, los apelantes no contaban con los elementos necesarios para ejercitar su reclamación antes del 3 de mayo de 2023. Manifestaron que, durante la hospitalización que culminó en la muerte de la señora Alvarado, el conocimiento disponible apuntaba que la participación del apelado se limitó a contestar la consulta de cardiología solicitada por el doctor Busquets al inicio de la estadía. De igual forma, indicaron que el 4 de agosto de 2020, el doctor Ricci conversó con la señora Romarys Díaz donde le informó que la condición de su madre era de naturaleza gastroenterológica, no cardiológica, por lo que no intervendría más en el caso.

No obstante, puntualizaron que el descubrimiento de prueba reveló dos intervenciones adicionales realizadas por el apelado que consistió en órdenes telefónicas impartidas al personal de enfermería, sin evaluar personalmente a la paciente, sin comunicación con la familia y sin coordinación directa con el doctor Busquets. Así, esbozaron que no fue hasta que se armonizó el récord clínico y con la deposición del doctor Busquets del 3 de mayo de 2023, que conocieron los elementos para ejercitar su reclamación. Dicho esto, resaltaron que lo declarado por el doctor Busquets el 3 de mayo de 2023, era distinto a lo que había indicado el 30 noviembre de 2022, sobre la identidad del cardiólogo que consultó, atendió y dictó órdenes ulteriores en el manejo cardiológico. A tales efectos, razonaron que durante un periodo significativo existió

verdadera confusión sobre quien fue el cardiólogo que manejo la paciente y cuál fue el rol funcional del apelado.

Respecto el tercer error señalado, aseveraron que el TPI erró al desviar su análisis hacia las Reglas 13.3 y 15.4 de Procedimiento Civil, *supra*, como si se tratara de un caso de identidad desconocida o de enmienda tardía, cuando el asunto giraba sobre la teoría cognoscitiva del daño. Por ello, señalaron que el foro *a quo* incidió a dar por resuelta la teoría cognoscitiva con la mera mención del doctor Ricci en la radicación de la demanda del 26 de julio de 2021, ignorando que el récord reflejaba una depuración de información gradual y materialmente controvertida sobre la identidad y el rol del apelado.

Previo a discutir los señalamientos de error previamente reseñados, cabe precisar que, al momento de revisar la concesión de una sentencia sumaria, nos encontramos en la misma posición que el TPI. A tono con esta norma, debemos evaluar, en primer lugar, si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra,* y con los dispuestos en *SLG Zapata-Rivera v. J.F. Montalvo,* supra. Al evaluar los escritos presentados por las partes juzgamos que, en esencia, ambas cumplieron con los referidos requisitos. Resuelto lo anterior, nos corresponde entonces evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria.

Así pues, tras haber revisado la totalidad del expediente, evaluados los argumentos de las partes y aquilatada la prueba documental que obra ante nos, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria. Por ello, nos resta determinar si el doctor Ricci fue traído al pleito dentro del término prescriptivo al amparo de la teoría cognoscitiva del daño. *Veamos.*

Según surge del expediente, la señora Alvarado falleció tras un arresto cardiorrespiratorio en el HIMA de Bayamón el 8 de agosto de 2020. Los apelantes plantearon que la muerte de la paciente fue a causa de negligencia médica, por lo que instaron una Demanda sobre impericia médica **el 26 de julio de 2021,** en el caso civil núm. BY2021CV02880, en contra del HIMA, el doctor Busquets, el doctor Martínez, el doctor Ricci, entre otros. No obstante, los apelantes desistieron voluntariamente de la reclamación y mediante Sentencia notificada **el 22 de octubre de 2021**, el TPI la dio por desistida, sin perjuicio.

Así las cosas, **el 17 de noviembre de 2021**, los apelantes presentaron otra *Demanda* por los mismos hechos incoados en la causa de acción del 26 de julio de 2021. A pesar de ello, no incluyeron al doctor Ricci en la reclamación sino hasta **el 1 de marzo de 2024**, por medio de una Segunda Demanda Enmendada.

Ahora bien, conforme al precipitado derecho, las acciones prescriben con el mero transcurso del tiempo fijado por ley, a menos que se realicen los actos interruptores dispuestos en el Código Civil. Art. 1861 del Código Civil de 1930, 31 LPRA sec. ant. 5291; *Meléndez Guzmán v. Berríos López, supra,* pág. 1019. Esto, con el fin de castigar la dejadez en el ejercicio de los derechos y evitar la incertidumbre en las relaciones jurídicas. *SLG García-Villega v. ELA et al., supra,* pág. 813.

En este sentido, es preciso reiterar que las acciones por impericia profesional son de naturaleza extracontractual, por lo que prescriben en el término de un (1) año desde que el agraviado supo la culpa o negligencia. Art. 1868 del Código Civil de 1930, 31 LPRA sec. ant. 5298; *Colón Gorbea v. Sánchez Hernández et al., supra,* pág. 768. Cónsono con ello, nuestro ordenamiento ha desarrollado la teoría cognoscitiva del daño para establecer cuando comienzan a transcurrir los términos para un perjudicado una vez conoce los

elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado Rivera v. Suárez y otros, supra*, pág. 194.

Dicho esto, los apelantes conocían la identidad del doctor Ricci y su intervención en el tratamiento de la señora Alvarado ya que este había sido incluido en la *Demanda* del 26 de julio de 2021, bajo el alfanumérico BY2021CV02880. Incluso, cuando de la referida demanda se desprende lo siguiente:

> 24. Además de los anteriores diagnósticos, los médicos demandados le diagnostican a través de su hospitalización angina inestable, sepsis, fallo cardiaco congestivo y fallo múltiple de órganos.
>
> [...]
>
> 28. Los médicos que trataron a la paciente desde que llegó a sala de emergencias hasta su fallecimiento, fueron asignados por el hospital para ello, incurriendo en negligencia crasa al manejar y tratar sus condiciones, sin tomar en cuenta su condición médica frágil, o pasar por alto su condición potencialmente fatal, ni advertir de ello a la parte demandante.
>
> [...]
>
> 30. La muerte prematura de la paciente fue el resultado del manejo médico crasamente negligente de los médicos demandados, del personal de enfermería de HIMA San Pablo Bayamón y de su personal ancilar que intervino con ella, al actuar y, en ocasiones, no actuar dentro del estándar médico apropiado, sin considerar o sopesar adecuadamente, además, los resultados de las pruebas diagnósticas y de imagen ordenadas y pasando por alto signos y síntomas que delataban un peligro potencial para su vida.

De igual forma, surge de la prueba documental que el 19 de agosto de 2022, el HIMA proveyó una lista del personal médico que intervino con la paciente donde se encontraba el apelado consignado como cardiólogo.

A pesar de ello, los apelantes no incluyeron al doctor Ricci en el pleito, sino hasta el 1 de marzo de 2024. Es decir, a más de dos (2) años desde que desistieron de la primera Demanda, a saber, el 22 de octubre de 2021 y desde que radicaron la reclamación que nos ocupa, el 17 de noviembre de 2021. A tales efectos, coincidimos con las determinaciones del TPI al establecer que:

Desde el 18 de octubre de 2021 la parte demandante tenía un informe pericial en el cual su perito tuvo la oportunidad de evaluar el expediente médico del Hospital HIMA San Pablo de Bayamón y en dicho informe hizo referencia a evaluación del cardiólogo.

Desde la radicación de la Demanda en el caso de BY2021CV02880, la parte demandante tenía conocimiento de que el Dr. Fabio Ricci Gorbea intervino como médico.

Así pues, es forzoso concluir que la causa de acción en contra del doctor Ricci se encontraba prescrita en cuanto a los apelantes adultos, ya que transcurrió el término de un (1) año desde que estos tenían los elementos necesarios para ejercer su reclamación. Por lo cual, confirmamos la *Sentencia Sumaria Parcial* emitida el 12 de enero de 2026.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones